# Richmond.

## IDA F. THOMPKINS, ET ALS. v. MARTHA RANDALL, ET ALS.

November 14, 1929.

The opinion states the case.

*George S. Harnsberger*, for the plaintiffs in error.

*Haas & Haas*, for the defendants in error.

CHICHESTER, J., delivered the opinion of the court.

Ida Thompkins and Mary Randall are seeking to probate two certain letters of J. M. Randall, deceased, as his last will and testament. The motion was docketed on August 21, 1928, and the circuit court tried the case without the intervention of a jury, and refused to probate the letters. The following facts as far as they are pertinent appear from the record:

J. M. Randall lived in the city of Harrisonburg, Va., and was twice married. His first wife, Alice Randall, was the mother of Ida Thompkins and the grandmother of Mary Randall, the proponents. She was quite industrious and with the help of the plaintiffs accumulated the funds with which the property, referred to in the record as 138 Wolfe street, Harrisonburg, Virginia, was purchased. Title was taken in the name of J. M. Randall.

When J. M. Randall married Alice, she had a small daughter about nine years of age, whose name was Ida, she being now Ida Thompkins, one of the plaintiffs. Ida lived with her mother and her stepfather as a member of the family until she was about seventeen years of age, when she went to Pittsburg and secured employment. The other plaintiff, Mary Randall, is the child of Ida, and when she was two years old she was left at the home of J. M. Randall with her grandmother, Alice Randall, while her mother, then Ida Randall, now Ida Thompkins, sought work in Pittsburg. Mary Randall grew up in the J. M. Randall home where she was well cared for and was the object of the love and affection of both J. M. Randall and Alice Randall. Alice Randall died in 1913 and J. M.

Randall was married the second time in 1917. He died in 1927 and left no last will and testament unless the two letters, one to Ida Thompkins and the other to Mary Randall are construed to be testamentary. The letter to Ida Thompkins was written March 18, 1919, and was as follows:

"HARRISONBURG, VA.,
"March 18, 1919.
"138 East Wolfe st.

"DEAR IDA:

"Your letter Was gladly received today. I am glad to hear that you are well it has been a long time since We have heard of each orther I lost your address and I Would put it of from time to time of giting the address from Mary. But I am Just the Same. I told you and Mary that this House & lot and Every thing is to belong to you and Mary Ida I mean What I say I am Sorry you do not beleave me. you must not think Because I have Married I Will Make the place over to My Wife. I could not do that and go before god in peace. I thought that Was Settle in your mine Now the reason I did not Send Mary. any thing Christmas after going to Richmond in october 1th 1918 to Bury my Brother Major I came home and was down With Rheumatism I have it yet but not so bad as I have had it and after Seening Condishion of thing down home I mean Richmond. I give what I could to help my nices. 5 little children Whose mother and Farther, had died, & left them. I hope you & Mary Will Come home this Summer & know that this is home Every thing is Just as it was when your mother live I am the Same to wards you & Mary & Will be so untell I die. Every thing is the Trunk Just as yourall left then you must pray more and drive the Evel thoughts from you mine My god Bless you pray for me

"(Signed) J. M. RANDALL.

p s

Ben Tolliver. Was Just hear he Send love to you"

He wrote the following letter to Mary Randall—

"HARRISONBURG, VA., Feb. 25, 1925.
"138. east Wolfe st.

"DEAR MARY:

"It has been a long time since I Wrote to you. I am a shame. Just a few lines to let you and Ida know that I am yet a live I suppose you think I have forgoting you all but it is not true I love you all Just the same I hope you Will Excuse me for not answering your sweet letter I received Some time a go I have been sick with the Faiceal Neuralgia for over two months not able to bee out doos, but is better now. I also received a letter from Ida. Will answer it soon. give love to Ida Mary. I Want you and Ida to know that this Home is for you and Ida & No body Else I would not do other Wise I hope you all Will have Faith in me also glad to know that you all have Bought Home up there. I can not Write this morning I am nervis. Martha. sends much love to you & Ida Write soon I am yours (Signed) J. M. RANDALL p s please give me Ida address I could not under it Wether it Was 228 N N 9th st or 228 5th st."

The evidence of Ida Thompkins and Mary Randall together with several other witnesses was duly taken and disclosed the facts above narrated. The court held that the letters were not testamentary in character and dismissed the proceeding. The issue, of course, is one of law and involves the question as to whether these letters dispose of the property heretofore referred to by will and whether they should be probated as the last will and testament of J. M. Randall. The error charged is that the court should have probated these

letters as the last will and testament of J. M. Randall, and that it was error not to do so. The real issue is a narrow one but it is far from being without difficulty.

■ All the authorities hold, indeed it is very clear, that it is not necessary to the validity of a will that it should have a testamentary form.

■ In the first case decided by the Supreme Court of Appeals in Virginia, *Sharp* v. *Sharp* (1830), 2 Leigh, (29 Va.) page 260, Judge Coalter, who delivered the opinion of the majority of the court, held that a signed memorandum on a scrap of paper to be a will. In that case it is said: "It seems to me to result from all the cases, when we are deciding on a paper, whether on its face it is testamentary or not, that it is the mind, not the words, the intention, not the manner, which is to be looked to; unless, indeed, the words or manner show a suspended mind or intention."

Judge Cabell wrote a strong dissenting opinion in this case which has been given some attention by this court in the intervening years, which indicates that it has departed somewhat from the strict doctrine laid down by Judge Coalter in *Sharp* v. *Sharp*, *supra*, quoted above. Thus in *McBride* v. *McBride*, 26 Gratt. [67 Va.] 476, etc., it was said that while the court held that the letter there offered for probate did not show testamentary intent because (first) the letter offered referred to another paper as a will, which paper had not been executed because not satisfactory to the decedent, and (second) the addressee of the letter was directed to "burn it," nevertheless, at page 480, of 26 Gratt. (67 Va.), it is held: "All the authorities hold, indeed it is very clear, it is not necessary to the validity of a will that it should have a testamentary form, or that the decedent should know that he had performed a testamentary act, or that he should intend

to perform such act. A deed poll, or an indenture, a bond, a marriage settlement, a letter, a promissory note, and the like, have been held valid as a will. If the paper contains a disposition of the property, to take effect after the death of the testator, though it was not intended to be a will, but an instrument of a different shape, yet if it cannot operate in the character in which it was intended, it may operate as a testamentary act." But the court quoted with approval the following from Judge Cabell's dissenting opinion in *Sharp* v. *Sharp*: "A paper is not to be established as a man's will merely by proving that he intended to make a disposition of his property similar to or even identically the same with that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. Unless it does so appear, the paper must be rejected, however correct it may be in its form, however comprehensive in its details, however conformable to the otherwise declared intention of the party, and although it may have been signed by him with all due solemnity." And later in *Smith* v. *Smith*, 112 Va. 209, 70 S. E. 491, 493, 33 L. R. A. (N. S.) 1018, Judge Cardwell, quoting from *McBride* v. *McBride*, said: " '* * * That identical paper must have been intended to take effect in some form. It must have been written *animo testandi*. In the language of Judge Cabell, a paper is not to be established as a man's will merely by proving that he intended to make a disposition of his property similar or even identically the same with that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. Unless. it does so appear, the paper must be rejected, however correct it may be in its form, how comprehensive in its details, however conformable to the otherwise declared intentions of the

party, and although it may have been signed by him with all due solemnity.' 'He must have designed thereby to dispose of his property. He must have looked to that paper as the means by which an object was to be accomplished, and that object the disposition of his property after his death. Unless he intended this, the paper is not his will, whatever he may have called it.' "

See *Pollock* v. *Glassell* (1846), 2 Gratt. (42 Va.), side pages 455. See also *Merrill* v. *Boal*, 47 R. I. 274, 132 Atl. 721, 45 A. L. R. at page 833. *In re Richardson's Estate*, 94 Cal. 63, 29 Pac. 484, 485, 15 L. R. A. 635, Judge Foote, delivering the opinion of the court, said: "It is not for courts to declare that to be a testamentary disposition of his estate when it does not clearly appear that such was the intention of the individual executing it."

In II Minor on Real Property (2d Ed.) section 1158, the author says: "It is necessary, however, that the writing, whatever it be, should have been designed by him as an actual disposition of property, to take effect after his death, not as a mere expression of what he intended or expected to do."

In 40 Cyc. 1077 it is said: "* * * * in order to render a document operative as a will it must have been indended to operate as a will when it was executed."

It appears from the authorities above cited that there is a shade of difference in the Virginia authorities themselves. This difference appears from a comparison of the majority opinion in *Sharp* v. *Sharp, supra*, on the one hand and the dissenting opinion of Judge Cabell in the same case, cited by Judge Staples in the *McBride Case, supra*, and apparently approved by Judge Cardwell in *Smith* v. *Smith, supra*, which in-

dicates that this court has been leaning toward the dissenting opinion by Judge Cabell in recent years.

So far as the instant case is concerned it is not necessary to discuss this apparent conflict for the reason that the letters which the plaintiffs seek to have pro- bated do not show the testamentary intention with sufficient clearness, at the time the letters were written, to dispose of the property by the letters themselves. "Heirs are favored in law, and get the benefit of any doubt affecting their rights." 2 L. R. A. 849.

The defendants here are the heirs at law of the writer of these letters and it certainly does not appear with sufficient clearness that the writer intended to dispose of his property by these letters. There is a promise, it is true, to leave the property to the plain- tiffs here, at some future time, but the idea of disposing of his property by these letters is by no means clear, and when this is the case the heirs are to be favored and to get the benefit of any doubt affecting their rights. The promise in the letter of March 18, 1919: "I told you and Mary that this House & lot and every- thing is to belong to you and Mary Ida, I mean What I say. I am sorry you do not beleave me," and in the letter of February 25, 1925: "I want you and Ida to know that this home is for you and Ida and nobody else," are to be construed, we think, as promises to make a will in the future in favor of the addressees of those letters. If this were not true such expressions as these, or a promise to make a will, would be a will without the writer knowing or intending it to be such, and would take effect as a will though the writer might subsequently change his mind. Testamentary intent, we take it, means that the writing offered for probate must have been executed by the testator with the intent that such writing take effect as his last will.

The letters offered for probate in this case show an absence of testamentary intent at the time they were written. To construe such letters as testamentary would be to make social correspondence a risky pastime.

We hold, therefore, that there was no error in the judgment of the circuit court and that the same should be affirmed.

*Affirmed.*