[S. F. No. 13342. In Bank.—April 18, 1930.]

In the Matter of the Estate of GRACE EDNA BUTTON, Deceased. RALPH JAMES BUTTON, Appellant, v. RALPH JAMES BUTTON, Jr., et al., Minors, etc., Respondents.

Marshall Nuckolls and Monroe B. Kulberg for Appellant.

Charles T. White and Edwin T. Cooper for Respondents.

CURTIS, J.—This is an appeal from an order denying probate of a document in the form of a letter claimed by the proponent to be the last will and testament of Grace Edna Button, deceased. The letter in question was unquestionably entirely written and dated by the deceased Grace Edna Button during her lifetime. It was found in the same room in which her dead body was discovered after the deceased had presumably taken her own life. It was dated, "San Francisco, Calif. August 25–1928," and was ad-

dressed to "Dear, dear Daddy." The letter consisted of four pages written on both sides of two leaves of paper. On the left margin of the last page were written the words, "Love from 'Muddy.'" It is conceded that the letter addressed to "Dear, dear Daddy" was written and addressed to the proponent, who at one time had been the husband of the deceased, but a final decree of divorce had been granted to parties on April 4, 1928. There were living at the date of the death of said deceased two children of said parties who had been born during said marriage, one Ralph James Button, Jr., who was then fourteen years of age, and the other Robert Henry Button, who was eight years old. The letter was evidently written in contemplation of death, and its contents show an unmistakable purpose on the part of the decedent to take her own life, which purpose was successfully accomplished shortly afterward on the day the letter was written. The letter contains expressions of deep affection of the writer for her former husband and her two sons. In it she reproaches herself, and expresses deep regret that she had failed to respond to her domestic responsibilities and thus to bring happiness to the family circle. She implores her former husband to care for, protect and train their two boys, that the latter may "grow up strong men for Uncle Sam." A few excerpts from this letter will indicate the feelings of the deceased toward her former husband and her two children, "I can only think of you, you, you, you, and I am ruining our boys' lives." "Keep your loving arms around them [the boys] and protect them as I know you will and always have." "I wish I could meet you in heaven just to be near you and the children." "I'd like to go down that 'long long trail' with you and our dear boys." In the body of the letter and toward the end of the second of its four pages is found the following paragraph: "I'm wearing you out dear and when I am gone you can just breathe one long sigh of contentment. I'd like to be cremated. You can have the house on 26th ave. and all the things of value so you won't be out any money on burying me."

This provision the proponent contends is testamentary in character and that by it the deceased intended to and did devise to him the house situated on Twenty-sixth Avenue in the city of San Francisco, together with other articles of

value belonging to her. No one appeared in the trial court to contest the petition of proponent, but said court nevertheless denied said petition. After the taking of this appeal the trial court appointed a guardian *ad litem* to represent said minors on the hearing of this appeal and said guardian has appeared herein and filed a brief in reply and in opposition to the brief of the proponent and appellant.

It is first contended by said guardian that the letter which the proponent claims is the last will of the decedent does not conform to the demands of section 1277 of the Civil Code, in that it is not signed as required by the terms of said section. This section of the code defines an olographic will, and among other requirements of the section is the provision that it must be signed by the testator. We have already called attention to the fact that the letter was not signed at the end or at the close thereof, but that on the left margin of the last page of the letter the words "Love from 'Muddy' " were written. It is not disputed but that these words were written by the deceased herself. The evidence further shows without conflict that the deceased was affectionately known by the proponent and by her children as "Muddy" and that they called her by that name. While the section of the code just referred to requires that an olographic will must be signed by the testator, it makes no requirement that in signing it the testator must use his legal or true name. In *Kimmel's Estate,* 278 Pa. 435 [31 A. L. R. 678, 123 Atl. 405], it was held that the signature "Father" to an olographic will in the form of a letter was sufficient, and that the instrument so signed was the valid will of the deceased. In *Wells* v. *Lewis,* 190 Ky. 626 [228 S. W. 3], a letter signed "Ant nauie" was admitted to probate as the last will and testament of Nannie Rogers. We might also refer to the following cases embodying similar rulings: *Barnes* v. *Horne,* (Tex. Civ. App.) [233 S. W. 859], *Knox's Estate,* 131 Pa. 220 [17 Am. St. Rep. 798, 6 L. R. A. 353, 18 Atl. 1021], and *Cartwright* v. *Cartwright,* 158 Ark. 278 [250 S. W. 11]. The cases of *Kimmel's Estate, supra,* and *Wells* v. *Lewis, supra,* are cited with approval by this court in the case of *Estate of Henderson,* 196 Cal. 623, 635 [238 Pac. 938, 942], holding that, "The subscription to the second paragraph, 'Your loving mother,' if a material consideration here, is a sufficient signature." We think from

the facts in this case, as the same are construed and understood in the light of the foregoing authorities, that the signing of the name "Muddy" to the letter in question by the decedent was a sufficient signature to meet the requirements of section 1277 of the Civil Code.

The guardian *ad litem* makes a further objection to the signature of the deceased and contends that, as it was written not at the end or close of the letter, but on the margin of the last page thereof, it was not written for the purpose or with the intent that it should there serve as a "token of execution" or as a signature to said letter. The decisions of this court and those of other jurisdictions so far as they have been called to our attention negative this claim on the part of the guardian. (*Estate of Manchester,* 174 Cal. 417, 421 [Ann. Cas. 1918B, 227, L. R. A. 1917D, 629, 163 Pac. 358]; *Estate of Streeton,* 183 Cal. 284 [191 Pac. 16]; *Estate of Bernard,* 197 Cal. 36 [239 Pac. 404]; *Estate of Henderson, supra.*)

The rule enunciated by these decisions is correctly stated in *Estate of Henderson, supra,* at page 635, in the following words: "Where a will has been signed by the testator, it is sufficient even though the signature is not in the place on the instrument where usually such writing is signed, viz., at the end of the document. (*Estate of McMahon,* 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669].) Of course, this statement is subject to the qualification that if the signature of the testator is not subscribed to the will—that is, if it is not at the end of the instrument, the usual place for the signature in such cases—then it must so appear from the document itself that the signature was thus placed 'with the intent that it should there serve as a token of execution' as to afford 'a positive and satisfactory inference' to that effect." The court further says in the case just quoted from, and following the quotation set out above, "That the instant case fully exemplifies the test thus stated is a proposition too obvious to require further consideration." We feel that these words may be fittingly applied to the facts in the present action. That the deceased wrote the word "Muddy" on the margin of the last page of the letter for the purpose of finishing and closing the letter with her signature seems so apparent to us that it would be a waste of words to present any argument to support this statement. The photostatic copy of the letter at-

tached to the transcript on appeal before us shows that the deceased in writing the letter had used the entire last page of the paper for the written portion of the letter and that the only unused portion of the page was a narrow space along the left margin of this page. On this she wrote ''Love from 'Muddy.' '' No other conclusion can be reached from these facts than that the deceased by writing her name on the margin of the last page of the letter intended thereby to sign the letter as effectually as if she had signed the same at the end or close thereof.

The further contention is made by the guardian *ad litem* that the letter of the decedent is not testamentary in character and, therefore, cannot serve the purpose of the last will of the deceased. In this connection the guardian *ad litem* calls attention to the fact that the letter contains over seven hundred words and but twenty-four of them are claimed to constitute a will; that nowhere in the whole letter does the writer mention the word ''will'' and that nowhere outside of said twenty-four words is there to be found any language indicating in the faintest degree that the writer intended to make a will by the terms of which she was disinheriting her two sons. That the writer of the letter devoted by far the greater portion thereof to matters other than that of disposing of her property cannot, we think, have any bearing upon the question as to whether or not that portion of her letter which does deal with her property constitutes a testamentary disposition of said property. The letter was undoubtedly intended by the decedent to be a farewell letter to the man who had formerly been her husband. It would have been indeed strange, in view of the circumstances under which the letter was written, had the decedent simply mentioned her property and designated the person or persons whom she desired to have the same upon her death. The fact that she referred to many personal and family matters with which she was deeply concerned in the same letter in which she stated that the proponent could have the house and other things of value belonging to her would not in any way render this disposition of her property ineffectual, nor would it in any manner change the character of such disposition. That she did not mention the word ''will'' in any part of her letter is neither conclusive nor even persuasive that she did not intend to make a testamentary dis-

position of her property. "No particular words are necessary to show a testamentary intent. It must appear only that the maker intended by it to dispose of property after his death." (*Mitchell* v. *Donahue*, 100 Cal. 202, 208 [38 Am. St. Rep. 279, 34 Pac. 614]; *Estate of Spitzer*, 196 Cal. 301 [237 Pac. 739].) That she did not refer to her property nor indicate any intention to dispose of it in a manner which would result in disinheriting her two boys except in the twenty-four word paragraph above quoted presents no good or legal reason why this paragraph of her letter should not be given effect and construed according to its clear intent. If in one part of her letter she has expressed an intent to make a testamentary disposition of her property, it is a matter of little or no consequence that she did not in other portions of her letter make reference to such intent. This is especially true when there is nothing in her whole letter which in the slightest degree conflicts with or casts doubt upon her intention as expressed in the above-mentioned paragraph.

On the other hand, the proponent contends that the letter clearly shows an intention on the part of the deceased to make a testamentary disposition of her property. In order for a document to be the last will and testament of a deceased person it must, in addition to meeting all other legal requirements, clearly show that the decedent intended it to take effect only after his death, and it must satisfactorily appear therefrom that the decedent intended by the very paper itself to make a disposition of his property in favor of the party claiming thereunder. (*Estate of Meade*, 118 Cal. 428 [62 Am. St. Rep. 244, 50 Pac. 541]; *Major's Estate*, 89 Cal. App. 238 [264 Pac. 542]; *Estate of Beffa*, 54 Cal. App. 186, 188 [201 Pac. 616]; *Estate of Spitzer*, *supra*.) The latter two of the foregoing cases express the rule as follows: "It is undoubtedly the general rule enunciated by the leading case of *Habergham* v. *Vincent*, 2 Ves. Jr. (Eng.) 231, and oft repeated, that the true test of the character of an instrument is not the testator's realization that it is a *will*, but his intention to create a revocable disposition of his property to accrue and take effect only upon his death and passing no present interest."

We are of the opinion that the document in question, the letter written by the deceased and particularly that para-

graph thereof quoted above, meets the test prescribed by the rule announced in the foregoing cited cases. That she intended that it should take effect only after her death is manifest. The purported disposition of her property follows a request that her body be cremated. She undoubtedly had then formed the intent to take her life, and the whole letter shows unmistakable evidence that it was written with the avowed purpose of arranging her affairs after death. Having intended that the letter, or at least that portion thereof which deals with her property, should take effect only after her death, the only remaining question is whether the decedent in any part of said letter has made or intended to make, a disposition of that portion of her property referred to in her said letter.

The fact that the words, which the proponent claims to be a testamentary disposition of her property, were contained in a letter and were not set forth in a formally prepared will does not detract from their testamentary character. The books are full of cases holding that letters under proper circumstances may be testamentary in character and accordingly they have been proved and judicially determined to be testamentary dispositions of the property of the testator. A partial list of such cases will be found in the note to *Estate of Kelleher,* 54 A. L. R. 913, 926.

"You can have the house . . . and all things of value" are words of gift as direct and certain as if the testatrix had said, "I give you the house and all things of value." They perhaps might not have been used by a trained lawyer had he been called upon to draw the decedent's will, but to a layman they have practically the same legal significance as if the word "gift" had been used. The contents of the letter show that she felt that she had been a burden to her former husband and that she exceedingly regretted that fact. She was asking a further favor of him that he might attend to the final disposition of her body after her death by means of cremation, and that this last request of hers might not be an additional burden upon him, she gave him the house and other articles of value, "so you won't be out any money in burying me." The record does not disclose the value of the house and other property mentioned in her letter, but evidently she considered that they were of sufficient value to meet the expense of her funeral. If it be assumed that the

value of the property given the proponent exceeded, even to a considerable extent, the expense of cremating the body of the deceased, that fact could not be held to change the plain meaning of the words, or defeat the disposition which she had thereby made of her property. It may well be that she gave the property to her former husband not only to reimburse him for the expense incident to the final disposition of her body, but also to provide a home for her boys, whose custody and care she had committed to the proponent, their father.

The argument is made that as the letter is filled with expressions of love for her two sons that it is not reasonable to suppose that she would disinherit them in favor of her divorced husband. If this were all that the letter contained there might be some force to the argument. But the letter further shows not only that the decedent had a deep and abiding affection for her former husband, but that she relied exclusively upon him to care for her two boys when she was gone. It also shows that she had every confidence in the proponent, that he would act as a true father to her children, for after requesting him to ''keep your loving arms around them and protect them,'' she added, ''I know you will and always have.'' What would be more natural for the mother under these circumstances than to give to the man, the father of her children, for whom she had such a deep affection, and into whose care she had so confidently entrusted the future welfare of her sons, the little property that she possessed that he might be the better able to carry out the trust imposed in him? It is not necessary, however, for us to resort to further argument as to the intent of the decedent. We are satisfied that the plain terms of the letter, written under the circumstances shown, can leave no doubt, but that the decedent intended to give, and did give to the proponent the property mentioned in the letter, and that this gift having been made with the intent that it should take effect upon her death is clearly a testamentary disposition of the property of the deceased in favor of the proponent.

This disposes of all points of any merit raised on the appeal. The judgment is, therefore, reversed, with directions to the trial court to enter an order admitting to pro-

bate the letter in question as the last will and testament of Grace Edna Button, deceased.

Richards, J., Preston, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.