IN RE WATTS' ESTATE.

WATTS, ET AL., APPELLANTS, v. CHOATE, RESPONDENT.

No. 8558

Submitted May 17, 1945. Decided June 14, 1945.

160 Pac. (2d) 432

Mr. H. C. Packer, of Hamilton, for appellants.

Messrs. O'Hara, Madeen & MacDonald, of Hamilton, for administratrix Bryson.

Mr. Clyde Hayden and Mr. J. D. Taylor, both of Hamilton, for respondent.

MR. JUSTICE ADAIR, delivered the opinion of the court.

This is an appeal from an order admitting to probate a warranty deed, a bill of sale and a letter as the holographic will of deceased.

John H. Watts, a long-time resident of Ravalli county, Montana, lost his wife in 1935 and thereafter lived alone on a 40-acre farm owned by him and located about 5 miles from Hamilton where, on April 14, 1943, he died at the age of 87 years leaving surviving him as his heirs, a sister, Mrs. Ida Choate, residing in the state of Oklahoma, a brother, James Watts, residing in the state of California, and the children of deceased sisters and of a deceased brother, none of whom were residents of the state of Montana.

At the time of his death the decedent owned the aforesaid farm together with certain livestock, machinery, implements, tools, household goods and equipment located thereon. In his house he had $845 in money. In a safety deposit box, which he

had rented in a bank in Hamilton, he had 4 certificates of deposit aggregating $3,200 and 13 participating certificates of the bank of the par face value of $1,243.89, all payable to his order and also unendorsed. He also had a checking account, deposits and other credits in the bank totaling more than ten thousand dollars.

A search was made to ascertain whether or not decedent had left a last will and testament and for such purpose an officer of the bank, accompanied by the bank's attorney, unlocked decedent's safety deposit box in the bank and found among the contents thereof an undelivered warranty deed to the farm and an undelivered bill of sale of certain personal property possessed by decedent at the time of his death. Both the deed and bill of sale were in favor of Ida Choate, of Wyandotte, Oklahoma, grantee.

Upon learning of decedent's death his sister, Ida Choate, came from her home in Oklahoma to Montana to attend the funeral, following which, on April 21, 1943, the bank's attorney obtained from decedent's safety deposit box the warranty deed and bill of sale and handed them to Ida Choate who purchased United States revenue stamps in the amount of $2.20, affixed same to the warranty deed and then, on the same day, caused the deed to be recorded in the office of the county clerk and recorder of Ravalli county.

Claiming title by virtue of the deed and bill of sale aforesaid, Ida Choate individually sold and conveyed the farm and, at public auction, sold the livestock, household goods and farm machinery, implements, tools and equipment thereon and kept the proceeds of such sales.

Mrs. Choate, being a non-resident, was not entitled to letters of administration but she did have the right to designate a competent resident for the office of administrator and this right she exercised on April 21, 1943, by a written request filed in the district court of Ravalli county requesting the appointment of Kathryn Bryson as administratrix of said estate. The court

made the requested appointment and Kathryn Bryson qualified and has since continued to act as such administratrix.

About five months later, Ida Choate filed in the district court of Ravalli county a petition alleging that decedent had made a holographic will which had been delivered to petitioner through the United States mail. The instrument is in the form of a letter alleged to have been sent by decedent from Corvallis, Montana, to Ida Choate and her husband, Joe Choate, at Wyandotte, Oklahoma. The letter is written in lead pencil upon two sides of a single sheet of paper. The original instrument has been certified to this court and is before us as a part of the record. There are 19 lines of writing on the front of the sheet and 13 lines on the back thereof. The wording and punctuation of the letter and of each line are as follows:

"June 9 1936

Corvallis Montana

Joe and Ida S a still

Her But not Feeling very

good two much Rain

Been Raing For a Weak

Every thing Soak Crops good

Will Haing as Soon as the

Wether settle this kind of

Wethe is Bad For my

Rheutism But Whn it

Clears up i Will Feel Better

My Hans is Pritty Bad Cant

Hardley Rite cant see very good

 Hapen

Well ida if any thing To me

 Find

you Will all My Bisnes Fix

and in the Citszen Bank

Still looks like Rain

made ida over every thing

Mrs Ellet cone and stade

two Day and Wash and clean
up Mr Whitsell No Better His
lag is Stiff old Bad Not
very good But Can talk Bud
Not Feeling very good But
Still Works at the Carpen trade
this a Bout all Got your
letter sending Mary Mounment
So you can see it Has clerd up
Fine Morning Dont no when i will Get
To Mail this letter as soon som one come a
 long
 "John Watts"

The petition also alleges that the warranty deed and bill of sale are each a part of the alleged holographic will and that they "are the documents and instruments referred to by the said John Watts in the said holographic will, bearing date of June 9, 1936."

Written objections to the petition to probate such instrument were filed by Kathryn Bryson, as administratrix of the estate, and by certain heirs of deceased.

At the trial special interrogatories were submitted to a jury and thereafter the court made certain findings of fact and conclusions of law followed by an order admitting the warranty deed, bill of sale and letter to probate. This appeal is from that order.

The question presented is: Should the warranty deed, bill of sale and letter, or any of them, have been admitted to probate as the last will of John H. Watts, deceased?

"The law makes certain evidence necessary to the validity of particular acts, or the proof of particular facts." Section 10607, Revised Codes. "A last will and testament, except a nuncupative will, is invalid, unless it be in writing and executed with such formalities as are required by law. * * *" Section 10609, Revised Codes.

The formalities required by law for a valid nuncupative will

510

are set forth in sections 6990-6999, Revised Codes; those required for a valid attested will are contained in section 6980, Revised Codes, while the requirements for a valid holographic will are enumerated in section 6981, Revised Codes.

The legislative purpose in enacting section 10609, Revised Codes, rendering a last will and testament invalid unless it be executed with such formalities as are required by law, is stated in Re Noyes' Estate, 40 Mont. 178, 186, 105 Pac. 1013, 1016, as follows:

"The purpose of the formalities prescribed is to prevent simulated and fraudulent writings from being probated and used as genuine. While the application of the strict rule of construction may sometimes defeat the intention of the testator as manifested by an imperfectly executed and authenticated writing, yet in the long run such statutes tend to promote justice, by lessening, so far as possible, the opportunity for fraud, which history and experience have demonstrated to be feasible and measurably safe in the absence of them. [In re] Estate of Seaman, 146 Cal. 455, 80 Pac. 700, 106 Am. St. Rep. 53 [2 Ann. Cas. 726]. After the writing is shown to have been executed and authenticated by observance of the technical requirements which the legislature has imposed, then the instrument will be construed liberally in order to give effect to the testator's intention. Upon the application for probate, however, the sole inquiry about which the court is concerned is whether these requirements have been complied with. The courts may not, therefore, out of regard for the supposed intention of the testator, however clearly it may be manifested by the attendant circumstances, adopt a rule which would open the way for the same frauds which the statute was designed to prevent. The restrictions made by it are reasonable and easily understood, and, as experience has shown, it is far safer for society that a rule be adopted that requires a strict compliance with them, and, as a consequence, that occasionally an honest attempt to execute a will be defeated, than that the protection thus thrown about the testator should be disregarded because of an undue

respect for his intentions, and the way be left open for the multitude of frauds and perjuries which would result.

"Since the right to make testamentary disposition is dependent upon the will of the Legislature, it is no hardship upon any one that the mode and formalities by which it may be effectively done are made mandatory by the same power. This rule of interpretation is recognized and applied by the courts generally, both in England and in this country, whether the particular formality involved refers to the place of the signature of the testator, or the fact that he signed or made acknowledgment in the presence of the witnesses, or that he made publication, or that the witnesses have properly signed in his presence, and in the presence of each other and at his request. All of these formalities stand as of equal importance, and all must be observed. (Citing cases.)"

The warranty deed and bill of sale herein are on printed ██ forms filled in with a typewriter. No part of the instruments is in the handwriting of the decedent other than the signature "J. H. Watts." There is no attesting clause. There are no attesting witnesses and each of the instruments is invalid, as a last will and testament, under section 10609, Revised Codes, because not executed with the formalities required by statute.

The question now arises as to whether the letter is sufficient under the law to constitute a holographic will.

In Re Major's Estate, 89 Cal. App. 238, 264 Pac. 542, a letter wholly dated, signed and written by the hand of decedent and addressed and sent by him to his nephew through the mail was held not to constitute a holographic will. The letter stated, in part, "i must tell you that i will go to St. Andre before long and i take up with me the copy of my testament you ask me for but be sure i have not change my idea your are to be the owner of the hold thing i am worting about $15,000 to $16,000 dollar."
"The question always before the mind of a court is not what the testator should have meant to do, or what words did he mean to use, but what did he mean by the words which he actually

used. In cases where doubt arises as to whether the instrument is a will or of some other character, the true test is whether the maker executed the document animo testandi. Without this it cannot be a will. Proof that a party intended to make a disposition of his property similar to or identical with that contained in a certain paper which he has executed does not make such paper his will. No matter what his intentions may have been with respect to the disposition of his estate, if the maker of an instrument did not intend *by that particular paper* to dispose of his property in the manner in which it could have been disposed by a will, such instrument must be denied probate, no matter how correct it may be as to form and execution, and no matter how clearly it may conform to the intentions of the maker which he had otherwise expressed. 1 Alexander on Wills, sec. 46, 47. In other words, when it is claimed that the intention of a deceased was that a paper should stand for a last will and testament, it must be plainly and satisfactorily apparent that the testator intended *the very paper* to be his will. Unless it so appears, the paper must be rejected. Heirs at law are not to be disinherited unless such intention is clearly manifested and expressed with legal certainty. [In re] Estate of Meade, 118 Cal. 428, 50 Pac. 541, 62 Am. St. Rep. 244. And courts cannot supply an intention which cannot be found in it. [In re] Estate of Branick, 172 Cal. 482, 157 Pac. 238. * * * That deceased had made a will under which his nephew was the sole legatee, but which will had been rejected for the reason it was not properly executed is conceded by both parties. This beyond question was the testament referred to in the letter. The letter, however, cannot be construed as a will, for it contains absolutely no words that can possibly be construed as a testamentary intent. Nor is there any evidence in the record that deceased ever intended that the instrument in question should constitute his will. * * * The document was clearly informative and not testamentary. We conclude, therefore, that the record contains no evidence to show that *the particular instrument* offered and received as a will was ever intended by the deceased to be his

will. Whatever his intention may have been to make his nephew his sole legatee, no words have been employed by him in the instrument in question to effectuate that purpose and it is clearly manifest that deceased did not intend the letter to constitute his will, but, as stated, it was clearly informative and containing the assurance that the nephew was remembered in a will:''

In Re Kisling's Estate, Cal. App., 156 Pac. (2d) 57, 59, the court said: ''Unless it be made to appear plainly and satisfactorily that the maker of the instrument intended that very paper itself to be his last will, such paper must be denied probate. And, where on its face the instrument is free from ambiguity, it may not be shown that the maker thereof intended it to operate differently than what the language used indicates.'' (Citing case.)

In Re Estate of Button, 209 Cal. 325, 331, 287 Pac. 964, 967, it is said: ''In order for a document to be the last will and testament of a deceased person, it must, in addition to meeting all other requirements, clearly show that the decedent intended it to take effect only after his death, and it must satisfactorily appear therefrom that the decedent intended by the very paper itself to make a disposition of his property in favor of the party claiming thereunder.'' (Citing cases.)

In Re Tyson's Estate, 336 Pa. 497, 9 A. (2d) 733, the decedent wrote a letter to his sister stating, ''I am making out my will leaving my securities to you,'' but no such will was found and the court held that the letter did not constitute a will.

In Re Richardson's Estate, 94 Cal. 63, 29 Pac. 484, 485, 15 L. R. A. 635, the decedent wrote a letter to his sister containing the following clause: ''My health is probably ruined, and I want to anticipate possibilities. You and your children get everything.'' The court held that the letter was not testamentary in character and that it made no disposition of the estate of the deceased.

In Re Estate of Branick, 192 Cal. 482, 157 Pac. 238, the de-

cedent wrote a letter to his brother concluding with: "Of course these both propertys goes to you and Charley if I should pass in before yous do only I wish Mary would be taken care of." A couple of months later the decedent undertook to make a holographic will but it was invalid. The appellate court in affirming the order refusing to admit the letter to probate said: "The letter in question as a whole does not disclose any purpose or intent to dispose of his estate. The remarks claiming to be testamentary were apparently casual statements intended as information merely. Under the decisions in Estate of Richardson, 94 Cal. 63, 29 Pac. 484, 15 L. R. A. 635, and [In re] Estate of Meade, 118 Cal. 428, 50 Pac. 541, 62 Am. St. Rep. 244, we think he had no testamentary intent in writing this letter to his brother."

In Thompkins v. Randall, 153 Va. 530, 150 S. E. 249, two letters in the handwriting of the deceased were offered for probate. In one letter he wrote: "Dear Ida. your letter was gladly received today. * * * But I am Just the Same. I told you and Mary that this House & lot and Every thing is to be long to you and Mary Ida I mean What I say I am sorry you do not beleave me. you must not think Because I have Married I will make the place over to My Wife. I could not do that and go before god in peace. * * * I came home and was down With Rheumatism I have it yet but not so bad as I have had it * * *." In the second letter decedent stated: "Dear Mary it has been a long time since I Wrote you. * * * I want you and Ida to know that this Home is for you and Ida & No body Else I would not do other Wise I hope you all Will have Faith in me * * *." In affirming the order of the trial court refusing to admit the letters to probate the appellate court said "that the letters which the plaintiffs seek to have probated do not show the testamentary intention with sufficient clearness, at the time the letters were written, to dispose of the property by the letters themselves. 'Heirs are favored in law, and get the benefit of any doubt affecting their rights.' 2 L. R. A. 849.

"The defendants here are the heirs at law of the writer of

these letters, and it certainly does not appear with sufficient clearness that the writer intended to dispose of his property by these letters. There is a promise, it is true, to leave the property to the plaintiffs here, at some future time, but the idea of disposing of his property by these letters is by no means clear, and when this is the case the heirs are to be favored and to get the benefit of any doubt affecting their rights. * * * Testamentary intent, we take it, means that the writing offered for probate must have been executed by the testator with the intent that such writing take effect as his last will. The letters offered for probate in this case show an absence of testamentary intent at the time they were written. To construe such letters as testamentary would be to make social correspondence a risky pastime."

In Re Witham's Estate, 160 Or. 686, 87 Pac. (2d) 651, 654, the court held that a recital in a will that the testator had "transferred and conveyed" to each of his sons "certain parcels of my real property" does not disclose an intention on the part of the testator to devise the said parcels of real estate to his sons by will. The court observed: "It is possible that at the time he executed the will he thought that the deeds had already been delivered or that they would be delivered prior to his death."

In the case of In re Noyes' Estate, 40 Mont. 231, 106 Pac. 355, 356, a letter written by the deceased and dated at Thermopolis, Wyoming, was sent by mail to the addressee at Laurel, Montana. Among other things, the letter stated: "If I never get back alive E. L. Fenton will take charge of affairs and settle everything and what is left will be yours, but you can neither rent or sell any of it to your relatives, not even your boys, if you should attempt to do what I have told you you could not do the property will be taken from you and given to my brother and sisters." In affirming an order denying probate this court said: "The Thermopolis letter does not refer either directly or indirectly to any paper whatsoever. In the absence of extrinsic evidence showing that Noyes had left the two imperfectly executed wills in the hands of Fenton, there is nothing to indicate

that any testamentary paper was in existence anywhere. That some of the provisions of both wills are recited was clearly for the purpose of conveying information to the defendant of the solicitude of the testator in her behalf, and not to ratify anything already done or to republish either or both of the wills which he had theretofore attempted to execute. * * *

"The answer made by the district court to the second inquiry was, we think, also correct; for, eliminating the conditional feature of the writing, it seems clear, in the light of the surrounding circumstances, that it was not written animo testandi; that is, with the serious intention then in the author's mind that it should be probated as his will. * * *

"The Thermopolis letter is not, upon its face, clearly of a testamentary character. Judging from the expressions used in it, the purpose in the mind of the writer was merely to inform the defendant that he had already made provision for her, that Fenton would act as his executor, and to call her attention to the limitation imposed upon her with reference to her uses of the property which she was to receive. There is no expression in it intimating in any way that she was to regard it in any other light than she had regarded any other letter written by him, or that she should preserve it as of any value to her. To say the least, it is of doubtful import and must be interpreted in the light of the attendant circumstances. In the light of the circumstances under which it was written, it seems clear that it was not intended to be a will. Though Noyes was then ill, he was not in extremis. He had already executed a will, as he supposed, and left it with Fenton, his executor. He refers to this fact and recites the main provisions of the instrument, assuming that Fenton would act as his executor, but does not use terms expressive of a present intention to appoint him as executor. That it was the result of a desire on the part of the writer merely to convey to the defendant the information that he had already provided for her is as clearly the proper interpretation of it, as that by the loose expressions employed he intended to make a new will, and thus to change in entirely

unimportant particulars one already supposed to have been executed with solemn formalities.

"Under the rule declared by the statute, an instrument should be so construed as to prevent intestacy; yet courts may not declare a paper to be a testamentary disposition of an estate when it does not clearly appear that such was the intention of the person executing it."

The letter to "Joe and Ida" of June 9, 1936, is not, upon its face, of testamentary character. It makes no reference to a will nor does it refer to any paper or writing. There is nothing in the letter that indicates that at the time he was writing it the decedent considered he was making his last will or that he was therein making any testamentary disposition whatever of his property. The letter informed "Joe and Ida" as to the condition of the health of the writer, of Mr. Whitsell and of "Bud"; it informed the addressees of the condition of the weather and of the crops; it informed them that Mrs. Ellet had spent two days washing and cleaning at the writer's home; it informed them that "Bud" was still working at his trade and that the writer had received a letter from them; it informed them that if anything should happen to him "you will Find all My Bisnes Fix and in the Citszen Bank Still looks like Rain made ida over every thing." The letter states nothing relative to what the writer did to "fix" his business. Decedent had large sums on deposit to his credit in a checking account in the bank yet he said and did nothing to "fix" that item of business. Mr. Watts lived for almost seven years after the date of the letter during which time he continued to write checks on such account. He alone and no other person was authorized to write checks or draw on the account. By no statement in the letter did John Watts "fix" his bank account so as to transfer it to his sister or so as to authorize her to take over such item of business nor did the decedent leave any writing purporting to "fix" that part of his business represented by the various certificates of deposit and participating bank certificates all made payable to his order which he kept unendorsed in his safety

deposit box. Clearly the letter does not nor was it intended by the decedent to authorize his sister to endorse or negotiate the above certificates.

By his use of the verb ''made'' in writing ''made ida over every thing'' the writer was referring to an act and deed done and completed before he wrote the letter. Such statement manifests no present intent that the particular letter which Mr. Watts was then writing should serve as a will or that it should effect a transfer or disposition of any of his property.

The contention is made, however, that when the decedent wrote in the letter ''you will all Find My Bisnes Fix in the Citszen Bank'' that he was referring to the undelivered deed and the bill of sale then kept by him in his safety deposit box in the bank and that by said reference the deed and bill of sale became incorporated in the letter.

In Brooker v. Brooker, 130 Tex. 27, 106 S. W. (2d) 247, 253, a will contained a provision reciting that the testator had executed deeds to named grantees and that ''said deeds'' should become effective on testator's death as provided in the deeds. The court held the provision void and that the language of the provision demonstrates an intent that all properties already deeded or to be deeded to the grantees shall pass by deed and not under the will. The opinion also states: ''It appears that the two deeds above mentioned were found among testator's effects after his death. They bear date prior to the date of the will. In our opinion, such a record is utterly insufficient to incorporate these deeds into the will by reference. The deeds are not described in any manner in the will, and neither are the properties included therein. * * * If deeds can be incorporated into a will in this way, a person could execute any number of deeds, store them among his papers, and then simply make a will saying his property shall pass as per deeds already executed. He could then destroy one or more of the deeds, and thereby alter the entire meaning of the will, and no one would be the wiser. Clearly, to uphold such a procedure would be to set a very unwise and dangerous precedent. In the same manner

a testator could refer in general language to any other class of documents as already executed by him, make such documents parts of his will by reference, and then destroy them, and no one would be the wiser. We think that even if it should be held that documents in existence at the time a will is executed can be incorporated therein by reference, a question we do not decide, still we think that each particular document should be identified by the will so as to leave the intention of the testator in regard. thereto reasonably free from doubt.

"We do not attempt to pass on the effect or validity of the above deeds as such. This being a probate proceeding, we here have no jurisdiction to do that. We simply hold that such deeds are not parts of the will."

In Reynolds v. Reynolds, 16 N. J. Misc. 1, 195 A. 721, 722, the court said:

"In the instant case, there is no recital of a devise nor any expression or indication of an intention to devise. The will merely states that the testator had by another instrument conveyed the property to his wife, which, in fact, he had not done. * * *

"The mere recital by the will that the testator had heretofore conveyed the lot in question to the plaintiff shows no such intention on the part of the testator to devise the lot by his will, but simply recites a fact, probably at the time believed by him to be true, to wit, that he had conveyed the property to the plaintiff by deed, which, in truth, had never been done."

The general rule is as announced in the annotation to Witham ▮ v. Witham, supra, in 110 A. L. R. at page 264, to the effect that a recital in a will of a conveyance of land which was not in fact made, or which proved to be ineffectual, will not operate as a devise, but that the rights of persons interested must be determined by resort to the instrument referred to. See also Noble v. Tipton, 219 Ill. 182, 76 N. E. 151, 3 L. R. A., N. S., 645; Allenbach v. Ridenour, 51 Nev. 437, 279 Pac. 32; Estate of Young's Estate, 123 Cal. 337, 55 Pac. 1011; In re

Case's Estate, 20 Cal. App. (2d) 264, 82 Pac. (2d) 499; Witham v. Witham, 156 Or. 59, 66 Pac. (2d) 281, 110 A. L. R. 253.

In Succession of Ledet, 170 La. 449, 128 So. 273, 274, the court said:

"And it may be conceded at once that a will cannot be made by mere reference to another document not itself a will, or to a former will that is invalid because of want of proper form."

Under the Montana statute, "A holographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed." Section 6981, Revised Codes.

The letter purports to be wholly in the handwriting of the decedent while no part of the deed or bill of sale is in his handwriting other than the signature. Furthermore, not having been executed with the formalities required by statute for a will, the deed and the bill of sale cannot be given testamentary effect. Hayes v. Moffatt, 83 Mont. 214, 229, 271 Pac. 433.

In Hewes v. Hewes, 110 Miss. 826, 71 So. 4, 5, the court said: "When an extrinsic document is incorporated into a will by a reference thereto in the will, it becomes a part and parcel thereof; and since a will not attested by witnesses must be 'wholly written' by the testator himself, it necessarily follows that for an extrinsic document to be incorporated into and thereby become a part and parcel of a will valid only if 'wholly written' by the testator himself, such document must also be so written; for should it not be, the whole will would not be in the handwriting of the testator." See also In re Smith's Will, 218 N. C. 161, 10 S. E. (2d) 676; Hessmer et al. v. Edenborn, 196 La. 575, 199 So. 647; In re Bauer's Estate, 5 Wash. (2d) 165, 105 Pac. (2d) 11.

In re Dimmitt's Estate, 141 Neb. 413, 3 N. W. (2d) 752, 756, 144 A. L. R. 704, cited and relied upon by respondent, involved no holographic writing. There a divided court held that an undelivered deed was incorporated in an attested will by reference by reason of a provision of the will which recites that the tes-

tator had already deeded to his niece a described quarter section of land "and for that reason I do not devise any real estate to her in this Will." Notwithstanding the quoted words, the majority opinion holds that the will did devise the real estate to the niece. Under our statutes and decisions we approve of the authorities cited and of the interpretation of the provision of the will given in the dissent, concurred in by three justices, wherein it is said: "The will itself supplies the unequivocal answer. The testator said in language so plain and simple that it is not subject to construction, but only to acceptance, that he did not so intend. He said: 'I do not devise any real estate to her in this will.' The fact that he intended to convey to her real estate by deed, and that what he did in that connection was sufficient or insufficient to effect a conveyance, is beside the point and of no consequence here. Words could not have been selected to express the testamentary intention more clearly than those used. There was no ambiguity, latent or patent. * * *

"The testator clearly had no intention of giving Alta J. Pullman anything by will and, in my opinion, this court has established a dangerous precedent in declaring the existence of a testamentary intent which is specifically negatived by the language of the will which is clear and plain."

The majority opinion in the Dimmitt case states: "It is undisputed that the deed was never delivered, and never left testator's possession and control in his lifetime." The Montana statute requires that the transfer of title be "from one living person to another" (Section 6835, Revised Codes) and by another statute in this state the undelivered deed would be ineffectual to vest the interest intended to be transferred (Section 6843, Revised Codes). No doubt Nebraska has similar statutory requirements, yet the ineffectual deed is given life and effect by incorporating it in a will and then giving to the plain words of such will such construction that title to the real estate passed thereunder to the niece despite the testator's clear statement, "I do not devise any real estate to her in this Will." Thus the deed by which the decedent intended to transfer title of

the real estate, if and when decedent saw fit to deliver the instrument, failed to effect a transfer while the will which the testator intended should not transfer title to the niece of any real estate was, by interpretation, held to effect a transfer. Delivery is required of a deed but not of a will. The fact that the deed proved ineffectual because not delivered furnishes no excuse for incorporating, by judicial construction, such ineffectual non-testamentary document into the will nor for reading into the dead man's writing a devise which he never placed therein.

Respondent cites and relies upon Barney v. Hayes, 11 Mont. 99, 27 Pac. 384, 385; Id., 11 Mont. 571, 29 Pac. 282, 28 Am. St. Rep. 495. That case is distinguishable upon its facts. There the testator left with his attorney in Montana his properly executed attested will which fully complied with all the requirements of the statute. Section 6980, Revised Codes. Nine years later he married in the state of Vermont and the marriage revoked that will. A couple of weeks later the testator in Vermont wrote a letter to his attorney in Montana who had charge of his will, advising the attorney of testator's marriage and, among other things, stating: "I have not strength to write much. * * * Now, what I want is for you to change my will so that she will be entitled to all that belongs to her as my wife. I am in very poor health, and would like this attended to as soon as convenient. I don't know what the laws are in Montana. I suppose Babcock & Rowley will have to witness the change or codicil. I don't know what ought to be done, but you do." The letter was entirely written, dated and signed by the hand of the testator and the court held the language thereof to disclose an animus testandi and that the writing constituted a properly executed holographic codicil which had the effect to republish the duly attested will theretofore executed. "The execution of a codicil, referring to a previous will, has the effect to republish the will, as modified by the codicil." Section 6990, Revised Codes.

In Re Noyes' Estate, supra, this court, speaking of Barney v.

██ Hayes, supra, said, 40 Mont. at page 242, 106 Pac. at page 359, "the decision should not be held controlling, except in cases where the facts and circumstances are substantially the same." The facts and circumstances of the instant case are most dissimilar from those of the Barney Case. Here the warranty deed and the bill of sale were not executed with such formalities as are required by the statutes for a last will and testament (Sections 6980, 6981, 6091-6994, Revised Codes) for which reason under the legislative mandate set forth in section 10609, Revised Codes, they are invalid and cannot be given any testamentary effect. Hayes v. Moffatt, supra. The letter of June 9, 1936, is not testamentary in character and its words and language wholly fail to disclose an animus testandi. "The legislative mandates are supreme, and there is no right to make testamentary disposition except upon compliance with those mandates." In re Noyes' Estate, supra [40 Mont. 178, 105 Pac. 1016]; In re Bragg's Estate, 106 Mont. 132, 163, 76 Pac. (2d) 57. The courts may not declare the writing to be a testamentary disposition of the estate of decedent where it does not clearly appear that such was the intention of the decedent at the time he wrote the letter. In re Noyes' Estate, supra.

The order appealed from admitting to probate the three instruments is reversed.

Mr. Chief Justice Johnson, and Associate Justices Morris and Cheadle, concur.

Mr. Justice Angstman, (dissenting).

I do not agree with the result reached in the foregoing opinion. I think a holographic will may, by reference, incorporate another instrument which is not entirely in the handwriting of the testator. This court, in line with the overwhelming weight of authority elsewhere, has held that a holographic will may by appropriate reference incorporate a paper not of a testamentary character and not wholly in the handwriting of testator so as to make it a part of the holographic will. This was so held in In re Noyes' Estate, 40 Mont. 231, 106 Pac. 355, 357, where this question was under consideration regarding an in-

strument not in the handwriting of the testator and the court said: "So, also, a paper not of a testamentary character is to be construed with one having that character, whenever the latter has, by appropriate reference to the former, incorporated it within itself, thus giving it also a testamentary character. Barney v. Hayes, 11 Mont. 99, 27 Pac. 384; Id., 11 Mont. 571, 29 Pac. 282, 28 Am. St. Rep. 495; Estate of Skerrett, 67 Cal. 585, 8 Pac. 881; [In re] Estate of Plumel, 151 Cal. 77, 90 Pac. 192, 121 Am. St. Rep. 100."

That this was not an accidental statement incorporated in the opinion of the court is shown by the fact that the court discussed the matter of showing by extrinsic evidence what existing document the testator referred to. On this point the court said: "The reference must be unmistakably the testator's. The description of the paper referred to, if complete and definite, dispenses with evidence to establish its identity. It is only when the description is incomplete that extrinsic evidence may be resorted to; for in Allen v. Maddock, in this connection, it is said: 'A reference in a will may be in such terms as to exclude parol testimony, as where it is to papers not yet written, or where the description is so vague as to be incapable of being applied to any instrument in particular; but the authorities seem clearly to establish that where there is a reference to any written document, described as then existing, in such terms that it is capable of being ascertained, parol evidence is admissible to ascertain it, and the only question then is whether the evidence is sufficient for the purpose.' So the rule is generally understood and applied."

The court in the Noyes case (Mr. Justice Holloway dissenting) held that the letter in question did not properly refer to any paper and hence no document was to be considered as incorporated in and made a part of the letter. But the case holds squarely that a document properly referred to may be considered as part of the holographic will.

Cases from other jurisdictions holding that existing documents not entirely written, dated and signed by the testator may be considered as a part of the holographic will when prop-

erly referred to, and that parol evidence may be resorted to to identify the instrument, are the following: In re Miller's Estate, 128 Cal. App. 176, 17 Pac. (2d) 181; Simon v. Grayson, 15 Cal. (2d) 531, 102 Pac. (2d) 1081; In re Estate of Dimmitt, 141 Neb. 413, 3 N. W. (2d) 752, 144 A. L. R. 704; In re Anthony's Estate, 21 Cal. App. 157, 131 Pac. 96.

Here the letter in question stating "Well Ida if anything happen to me you will find all my bisnes Fix and in the Citszen bank" and "made Ida over every thing," shows plainly that Mr. Watts wanted his sister Mrs. Ida Choate to have all of his property. The documents which were referred to in the Citizens bank were the deed and a bill of sale made out to Mrs. Choate, both being acknowledged before a notary public. He thought these instruments accomplished the same purpose as a will. The fact that technical rules of law prevented the deed and bill of sale standing alone from accomplishing a transfer of his property at death is immaterial.

As was said by the court in Heaston v. Kreig, 167 Ind. 101, 112, 77 N. E. 805, 809, 119 Am. St. Rep. 475: "The doctrine is, that when a man has expressed clearly his intention to dispose of his estate, and has taken an ineffectual mode of doing it, yet if the instruments can be construed in another manner, so as to effectuate his purpose, the ceremony is a matter of form, and the substance shall be carried into execution, if it may be law." And the court in that case, quoting from Lord Hale, said: "That the judges ought to be curious and subtle to invent reasons and means to make acts effectual, according to the just intent of the parties * * * The judges in these later times (and I think very rightly) have gone further than formerly, and have had more consideration for the substance, to wit, the passing of the estate, according to the intent of the parties, than with the shadow, to wit, the manner of passing it." And see In re Hengy's Estate, 53 Idaho 515, 26 Pac. (2d) 178.

This case is not comparable to that of In re Major's Estate, 89 Cal. App. 238, 264 Pac. 542, relied upon in the majority opinion, for in that case there was no deed or bill of sale or

other instrument aside from the letter which merely expressed the idea of the writer as to where he wanted his property to go. There was no affirmative action taken to carry out that desire as in this case.

In the case of In re Kisling's Estate, Cal. App., 156 Pac. (2d) 57, the letter in question was not entirely written by the decedent. Likewise it did not by reference adopt a deed and bill of sale as here. The writing was addressed to a lawyer and on its face showed that the writer desired to have the lawyer draft a will and this showed plainly that the letter itself was not to operate as a will.

The majority opinion quotes from the case of In re Estate of Button, 209 Cal. 325, 287 Pac. 964, 965, to the effect that in order for a writing to be testamentary it must appear that it was intended to be effective at death. In that case a letter by a woman to her former husband containing this statement, "You can have the house on 26th ave. and all the things of value so you won't be out any money on burying me," was held to be a holographic will so as to disinherit two sons of the testator. In the instant case it is clear that Mr. Watts desired the deed and bill of sale, being the instruments referred to in the letter, to become effective only after death. Other cases relied upon in the majority opinion which point out that certain letters were insufficient to constitute a holographic will were cases in which a letter alone was relied upon and where no deed and bill of sale had actually been made, as here.

The risk in social correspondence pointed out in Thompkins v. Randall, 153 Va. 530, 150 S. E. 249, a case relied on in the majority opinion, will not be affected here because in confirmation of the intention manifested by the letter stand the deed and bill of sale both duly acknowledged before a notary public. This case is far beyond the stage of social correspondence.

The majority opinion quotes extensively from the case of Brooker v. Brooker, 130 Tex. 27, 106 S. W. (2d) 247, 249, where the testator made a formal will one paragraph of which stated that "I have conveyed, or shall hereafter convey or may

at any time convey Real Estate by deed to take effect after my death to my sister, Alice Brooker.'' The court held that deeds could not be thus incorporated in a will by reference. I do not agree with the soundness of that opinion. The court reasoned that the testator might have a number of deeds thus referred to in a will and later destroy one or more of them and as the court stated "no one would be the wiser." No one but the testator has any right to say how his property shall be disposed of after his death, if he has exercised the right to speak on the subject. I think it is proper for a testator to adopt by reference in a will any documents he sees fit and if he is so disposed he may later destroy one or more of them and that would be nobody's business but his own. I realize that many courts deny the right to adopt deeds by reference when the deeds have not been delivered as here.

On the contrary, there is an equal number of cases taking the opposite view. They are listed in the note in 110 A. L. R. commencing on page 268 and need not be repeated here. When the authorities are about evenly divided on the point, as we find them on this question, I think we should follow those that carry out rather than defeat the plain intention of the testator.

Holographic wills need not be in any particular form. It is enough that the intention is made plain. Barney v. Hayes, supra; Dahmer v. Wensler, 350 Ill. 23, 182 N. E. 799, 144 A. L. R. 709. Here the deed and bill of sale were in existence and in the Citizens bank when the letter was written. Their authenticity is not questioned. The letter was wholly written, dated and signed by John Watts and the jury so found. Plainly he wanted his sister Ida Choate to have all of his property. Just why should Mrs. Choate be penalized for the mistake of Mr. Watts in not hiring a lawyer to express his intention with more elegant phrases and in better grammatical style? Mrs. Choate was the only member of his family with whom Mr. Watts corresponded. His neighbors with whom he visited never heard him speak of any relative except this sister, Mrs. Choate. He was fond of her and corresponded with her over a period of 40 or 50 years. She

528

visited with him on several occasions, staying with him months at a time. He also visited her in her home in Missouri and though two brothers lived a short distance from her home he never visited them, nor did they visit him. Mrs. Choate had looked after their mother and she is the only one in the family who ever did anything for Mr. Watts. It was perfectly natural that he should desire that his property go to her. This court, it seems to me, should not thwart his purpose. I think the district court was right in admitting the instruments to probate as the will of Mr. Watts and that the judgment should be affirmed.