No. DA 06-0325

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 146

_____

IN THE MATTER OF THE ESTATE OF

LUCILE B. SNYDER,

      Deceased.

_____

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and for the County of Cascade, Cause No. BDP-92-279(c),
                    The Honorable Kenneth R. Neill, Presiding Judge.


COUNSEL OF RECORD:

        For Appellant:

                Steven T. Potts, Thompson, Potts & Donovan, P.C., Great Falls, Montana

        For Respondent:

                Robert Emmons, Attorney at Law, Great Falls, Montana

_____

Submitted on Briefs:  May 9, 2007

Decided:  June 12, 2007

Filed:

_____
                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Lois K. Snyder (Lois), heir to the Estate of Lucile B. Snyder, deceased, (the Estate) appeals from two orders of the Eighth Judicial District Court, Cascade County, resolving a dispute between Lois and her brother Neil E. Snyder (Neil) over their respective shares of Lucile's Estate.

¶2     We review the following issues on appeal:

¶3     Does Lois present an appealable issue pursuant to the Montana Rules of Appellate Procedure?

¶4     Did the District Court err when it ruled that the property still remaining in the Estate should be appraised and distributed based upon its current market value?

¶5     Did the District Court err when it ordered Lois to quitclaim her inherited interest in the Flathead County property back to the Estate?

### FACTUAL AND PROCEDURAL HISTORY

¶6     Lucile B. Snyder (Lucile) died on November 18, 1992, devising her entire Estate to her two children, Neil and Lois. She nominated Neil as the personal representative for her Estate. The Estate included a controlling interest in the Snyder's family-owned drugstore, Snyder's, Inc. The Estate also contained a property known as 1227 Fifth Avenue North in Great Falls and 40 acres of undeveloped land in Flathead County.

¶7     Lucile's will provided, in relevant part, that she "devise[d] all the rest, residue and remainder of my property . . . to my two children, LOIS K. SNYDER and NEIL E. SNYDER, in equal shares, share and share alike." The will provided, however, that "[f]ifty-one percent (51%) of my stock in [Snyder's, Inc.] . . . shall be first apportioned

2

and set aside to make up the share of my total estate which shall go to my son, NEIL E. SNYDER." The will explained that "it is [Lucile's] will and desire that [Neil] have said business, or control of the corporate business as the case may be, but without ultimately diminishing the equal distribution of my estate to my two children, whom I hold in equal regard."

¶8 Neil filed an application for informal probate and appointment of himself as personal representative on November 25, 1992. Neil, acting as the personal representative, proposed to distribute 51% of Lucile's stock in Snyder's, Inc. to himself and 49% of the stock to Lois. He assured Lois that she would be paid cash for the 2% of stock that he would receive in excess of her shares. Neil also proposed that the remainder of the Estate would be divided equally between them. Lois objected. Neil petitioned the District Court to interpret the will after he and Lois failed to agree to a distribution method.

¶9 The District Court adopted Neil's proposal and ordered that the "personal representative must distribute the corporate shares of the decedent 51% to Neil and 49% to Lois." The court ordered that the "remaining assets must be divided equally between Neil and Lois, except that [Neil] must first distribute to Lois the difference in value between Neil's 51% and Lois'[s] 49% of those shares." Accordingly, Neil executed deeds of distribution to Neil and Lois as tenants in common for the Great Falls and Flathead County properties on March 16, 1998. The court entered a decree of distribution and order approving Neil's final accounting of the Estate on May 26, 1999.

3

The decree noted that Lois would receive $4,960 in cash to equalize the stock distribution.

¶10 Lois successfully appealed the court's decree of distribution. *In Re Estate of Snyder*, 2000 MT 113, 299 Mont. 421, 2 P.3d 238 (*Snyder* I). This Court determined that Lucile's expressed intent required that Neil take the entire interest in Snyder's, Inc. and that Lois receive estate assets of comparable value. *Snyder* I, ¶ 16.

¶11 On remand Lois and Neil engaged in extended litigation over the valuation of the Flathead County property and how it should be distributed in light of this Court's decision in *Snyder* I. Both parties agreed that Lois should receive some combination of the Flathead County and Great Falls properties, equal in value to Snyder's, Inc. The parties' mutual desire to gain a larger share of the increasingly valuable Flathead County property frustrated their efforts, however, to settle on which property should be distributed first and how that property should be valued.

¶12 Neil proposed that Lois should be compensated for her interest in Snyder's, Inc. with the Great Falls property. He suggested that she would be compensated with the Flathead County property only to the extent that the value of Snyder's, Inc. exceeded the value of the Great Falls property. Neil also proposed to value the Great Falls and Flathead County properties at their "current value." His method would ensure that he would receive approximately one-half of the Flathead County property as its value had appreciated to multiple times the value of the Snyder's, Inc. shares. Neil stated in 2001 that he believed the Flathead County property to be worth somewhere between

4

$1,000,000 and $2,000,000. Neil estimated that Snyder's, Inc. was worth only around $160,000.

¶13 Lois proposed that she should receive a share of the Flathead County property equal in value to Snyder's, Inc, and that all property left in the Estate should be distributed according to its value at Lucile's time of death, as calculated for federal estate tax purposes. Lois's method would ensure that she would receive the entire Flathead County property, as its value at the time of Lucile's death was $160,000 and the value of Snyder's, Inc. was approximately $190,000.

¶14 The District Court rejected Lois's proposed distribution method and determined instead that the stock and property "shall be valued at current valuation." The court noted that the Great Falls property was no longer at issue as the property had been "sold by agreement of the parties for cash and notes." Lois appealed.

¶15 We dismissed Lois's appeal as "not ripe for appellate review" in our Order dated November 22, 2005. We noted that "it is clear from the Order that there remains for determination by the District Court the valuation of the stock and real property contained in the Estate, as well as the distribution of the property to Lois and her brother Neil . . . ."

¶16 Neil then moved the District Court to order Lois "to execute her quitclaim deed to the Estate of Lucile B. Snyder for the real property located in Flathead County." He argued that our decision in *Snyder* I had voided his 1998 distribution of the Flathead County property. Neil also requested a "scheduling conference regarding disclosure of expert values of the Flathead Lake property and a hearing date for final distribution of the estate."

5

¶17 The court ordered Lois to quitclaim her interest in the Flathead County property back to the Estate, noting that "Lois'[s] successful appeal [in *Snyder* I] upset the entire scheme of distribution" set forth in the court's January 25, 1998, order. The court pointed out that it "must have the flexibility to order distribution of [the Flathead County] property . . . by partition, in kind distribution[,] or sale and distribution of proceeds" in order to probate the Estate pursuant to *Snyder* I. The court explained that "[i]t is highly unlikely that Lois will receive the exact interest in the Flathead property that presently stands in her name." The District Court directed the parties to exchange names and reports of experts in preparation for a valuation hearing to be held on June 14, 2006. Lois filed her notice of appeal on April 10, 2006, before the court could conduct the valuation hearing.

## STANDARD OF REVIEW

¶18 The judicial interpretation and construction of a will presents a question of law. *Snyder* I, ¶ 8. We review a district court's conclusions of law to determine whether those conclusions are correct. *In re Estate of Harms*, 2006 MT 320, ¶ 12, 335 Mont. 66, ¶ 12, 149 P.3d 557, ¶ 12.

## DISCUSSION

¶19 *Does Lois present an appealable issue pursuant to the Montana Rules of Appellate Procedure?*

¶20 Lois appeals two orders of the District Court: (1) the September 22, 2004, order determining that the remaining estate property should be distributed according to its current market value; and (2) the March 16, 2006, order compelling Lois to quitclaim her

6

interest in the Flathead County property back to the Estate. Neil argues that Lois improperly bases her appeal on M. R. App. P. 1(b)(2) and (3).

¶21 Rules 1(b)(2) and (3) provide, respectively, that a party may appeal from an order "directing the delivery, transfer, or surrender of property," or an order "against or in favor of directing the partition, sale, or conveyance of real property . . . ." Neil argues, without authority, that M. R. App. P. 1(b)(2) and (3), are both inapplicable in light of the fact that Lois has no "legal claim" to the Flathead County property. He contends that this Court's opinion in *Snyder* I nullified the 1998 distribution by which Lois received her legal interest in the Flathead County property.

¶22 Lois responds that she possesses a valid deed for the Flathead County property and M. R. App. P. 1(b)(2) and (3) provide this Court with authority to hear her appeal. She points out that the plain language of these rules encompasses the court's order that Lois must "[quitclaim deed] back to the Estate the interest in the Flathead Lake property previously deeded to her." We agree. The court's order both directed "the delivery, transfer, or surrender of property," under M. R. App. P. 1(b)(2), and represented a ruling "against or in favor of directing the partition, sale, or conveyance of real property . . . ," under M. R. App. P. 1(b)(3).

¶23 We likewise held in *Estate of Murphy*, 183 Mont. 127, 132-33, 598 P.2d 612, 614-15 (1979), that an order authorizing a personal representative to transfer an estate's "cash and personal property" to an estate creditor constituted an appealable order pursuant to M. R. App. P. 1. Similarly, in *Graveley v. MacLeod*, 175 Mont. 338, 342, 573 P.2d 1166, 1168 (1978), we held that an order requiring a party to transfer property by means of a

7

contract for deed qualified as an appealable order pursuant to M. R. App. P. 1(b)(2). Moreover, neither Neil nor the District Court would have found it necessary to order Lois to quitclaim her interest in the property if she had no legal interest in the property.

¶24 Neil also argues that Lois lacks a basis on which to appeal from the District Court's September 22, 2004, order that the stock and property "shall be valued at current valuation." He points out that we already dismissed this appeal as premature in our order of November 22, 2005. Neil fails to note, however, that Lois's proper appeal of the court's March 16, 2006, quitclaim order provides this Court with jurisdiction over both matters. M. R. App. P. 2(a).

¶25 We faced a similar situation in *Hennen v. Omega Enterprises, Inc.*, 264 Mont. 505, 506, 872 P.2d 797, 798-99 (1994), where the plaintiff appealed an adverse ruling on his request for declaratory and injunctive relief. The respondent argued that the plaintiff's failure to seek M. R. Civ. P. 54(b) certification for the declaratory judgment ruling had rendered his appeal premature. *Hennen*, 264 Mont. at 507-08, 872 P.2d at 798-99. We noted, however, that the plaintiff had appealed properly the court's denial of injunctive relief pursuant to M. R. App. P. 1(b)(2). *Hennen*, 264 Mont. at 507-08, 872 P.2d at 798-99. We clarified that the plaintiff's valid appeal of the court's denial of his request for an injunction permitted this Court to review both matters pursuant to M. R. App. P. 2. *Hennen*, 264 Mont. at 507-08, 872 P.2d at 798-99.

¶26 The Dissent contends that our order of November 22, 2005, represents the "law of the case" and precludes Lois's present appeal. We explained in our order that "[w]hile Rule 1(b)(3), M.R.App.P., sets forth multiple judgments or orders entered in estate or

8

probate matters which are immediately appealable even though an estate is not fully and finally closed, the Order in this case is not one of them." We then illustrated, "[f]or example," an order directing the distribution or partition of an estate to be appealable. We noted that the Estate had yet to be distributed and that the distribution would not occur "until after the court receives the proposed valuations from the parties and holds a hearing on valuations."

¶27 This language does not preclude Lois's present appeal. The law of the case binds the parties only on those issues that the court previously has decided. *See Muri v. Frank*, 2003 MT 316, ¶ 11, 318 Mont. 269, ¶ 11, 80 P.3d 77, ¶ 11. We determined in our November 22, 2005, order that Lois's appeal lacked any basis under the Montana Rules of Appellate Procedure. We advised her that she would be able to appeal, "[f]or example," an order directing the distribution or partition of the Estate. We explained, however, that the District Court would have to hold a valuation hearing before it could distribute or partition the Estate. We clarified that Lois could not presently appeal an order "directing the distribution or partition" of the Estate as the court had yet to hold a valuation hearing.

¶28 Lois now appeals the court's order compelling her to quitclaim her Flathead County property back to the Estate. Lois's present appeal does not involve the distribution or partition of the Estate. Her appeal represents the opposite transaction—the court ordered her to convey property back to the Estate. Her appeal remains valid regardless of whether the court held a valuation hearing, as evidenced by the fact that the court ordered her to quitclaim her property without holding such a hearing.

9

¶29 Moreover, the language in our November 22, 2005, order upon which the Dissent relies represents dictum, intended only to explain our reasoning. Our order did not dictate a precondition to any further appeals in this case. It simply pointed out a necessary precondition to Lois's hypothetical appeal of a hypothetical order distributing or partitioning the Estate. Our order explained that this hypothetical order "directing the distribution or partition of an estate" represented only one of "multiple judgments or orders entered in estate or probate matters which are immediately appealable . . . ." Lois now appeals one of the "multiple judgments" that was not at issue in our order of November 22, 2005, and, thus, the law of this case permits her present appeal.

¶30 *Did the District Court err when it ruled that the property still remaining in the Estate should be appraised and distributed based upon its current market value?*

¶31 Lois argues that the District Court ignored Lucile's express intent to distribute her Estate according to its value at her death, as calculated for federal estate tax purposes. Lois points to the provision in Lucile's will that states her intent to distribute the "rest, residue and remainder" of her property to Lois and Neil "in equal shares, share and share alike." The will then provides specific instructions with respect to Snyder's, Inc.:

> Provided further, however, that should the business of Snyder Drug . . . be not fully incorporated . . . at the time of my death; then, . . . Snyder Drug . . . shall go to my son, NEIL E. SNYDER. If the valuation of said Store and assets connected therewith for Federal Estate tax purposes shall exceed the one-half (1/2) share to go to my son NEIL; then to the extent of such excess, the business of SNYDER DRUG . . . shall nevertheless go and be distributed to my son, NEIL, and be subject to a charge in favor of my daughter, LOIS K. SNYDER, the amount necessary to give her a full one-half (1/2) of my total estate based upon the value thereof as finally determined for Federal Estate Tax purposes. . . .

10

> If . . . Snyder Drug shall be owned by Snyder's, Inc., a Montana Corporation, at the time of my death; then and in that event, Fifty-one percent (51%) of my stock in said corporation, plus whatever amount thereof as is necessary to make a full share of such stock, shall be first apportioned and set aside to make up the share of my total estate which shall go to my son, NEIL E. SNYDER.

¶32 The will anticipates that Snyder's, Inc. may not be fully incorporated at the time of Lucile's death. The will instructs the personal representative to distribute Snyder's, Inc. according to its value for federal estate tax purposes if Snyder's, Inc. is not fully incorporated. The will also notes that Lois should be compensated with other property from the Estate, based on its value for federal estate tax purposes, to the extent that Neil's share of Snyder's, Inc. exceeds one-half the value of the Estate. The will provides, in the alternative, that 51% of Snyder's, Inc. stock shall be distributed to Neil and 49% to Lois if the company is fully incorporated at the time of Lucile's death. The will makes no mention of a valuation method in the event of this contingency.

¶33 The court determined that Snyder's, Inc.'s incorporated status at the time of Lucile's death rendered inoperative "the provision for valuation at estate tax values . . . ." The court ordered, pursuant to § 72-3-902(2)(b), MCA, that the Estate assets should be valued as of the date of distribution. Section 72-3-902(2)(b), MCA, provides that "[u]nless a contrary intention is indicated by the will, . . . the property distributed in kind is valued at fair market value as of the date of its distribution . . . ." The court explained that Lucile's "contrary intention" to value her Estate pursuant to the federal estate tax applied only in the event that Snyder's, Inc. was unincorporated at the time of her death. Snyder's, Inc. remained incorporated at the time of Lucile's death. The court concluded,

11

therefore, that § 72-3-902(2)(b), MCA, required that her Estate be "valued at fair market value as of the date of its distribution."

¶34 We stated in *Snyder* I that "[t]he testator['s] intent controls the distribution of assets pursuant to a will" and that we derive the testator's intent "'from all parts of the will . . . construed in relation to each other . . . to form one consistent whole.'" *Snyder* I, ¶ 10 (quoting *Matter of Estate of Evans*, 217 Mont. 89, 94, 704 P.2d 35, 38). We further noted that the words of a will "are to receive an interpretation which will give some effect to every expression, rather than an interpretation which will render any of the expressions inoperative." *Snyder* I, ¶ 15 (quoting *Matter of Estate of Bolinger*, 284 Mont. 114, 121, 943 P.2d 981, 985 (1997)).

¶35 The will, when read as a whole, indicates that Lucile intended to have the Estate distributed pursuant to its value at her death, as calculated for federal estate tax purposes. The will specifically instructs the personal representative on how to value the Estate at two places in the excerpt discussed in ¶ 31, *supra*. The will specifies in both instances that the value for federal estate tax purposes should be used. The will's failure to state explicitly that the federal estate tax valuation method should be used in the event that Snyder's, Inc. remained fully incorporated likely shows no more than that Lucile failed to anticipate that the value of her Estate might change drastically while litigation delayed its probate for nearly a decade.

¶36 Where the will did anticipate that a specific valuation method might be needed, however, the will provided that the Estate should be valued at the time of Lucile's death, pursuant to the calculation for federal estate tax purposes. This interpretation gives effect

12

to the will's twice stated provision that Lucile's Estate should be valued at the time of Lucile's death. *Bolinger*, 284 Mont. at 121, 943 P.2d at 985. This interpretation also comports with Lucile's intent that Lois and Neil each would receive half of the value of the Estate with Neil's half to include Snyder's, Inc. *Snyder* I, ¶ 10.

¶37 We can find no support in the text of the will for the proposition that Lucile intended to make the value of the entire Estate depend on whether Snyder's, Inc. remained incorporated at the time of her death. We conclude that the District Court erred in determining that Lucile's remaining Estate should be distributed according to its current market value. *Harms*, ¶ 12. Our determination that Lucile intended for her Estate to be distributed according to its value for federal estate tax purposes precludes the application of § 72-3-902(2)(b), MCA. We instruct the court on remand to conduct the valuation and distribution of the remaining Estate based on the Estate's value as calculated for purposes of the federal estate tax.

¶38 *Did the District Court err when it ordered Lois to quitclaim her inherited interest in the Flathead County property back to the Estate?*

¶39 Lois argues that the court failed to comply with § 72-3-906, MCA, when it ordered Lois to quitclaim her interest in the Flathead County property back to the Estate. Section 72-3-906, MCA, provides, in relevant part, that "a distributee of property improperly distributed . . . is liable to return the property improperly received . . . ." Lois asserts that the property was not "improperly received" in light of the fact that she will be entitled to at least a one-half interest in the property under any conceivable distribution.

13

She points out that the District Court's order states that "[i]t is highly likely that Lois will receive at least one-half of the Flathead County property or its value."

¶40 Lois also argues that the District Court erroneously justified the quitclaim order based on its need for the "flexibility to order distribution of that property to be accomplished by partition, in kind distribution[,] or sale and distribution of proceeds . . . ." She contends that the court has only two options in distributing the Flathead County property: (1) partition, sell the property, and distribute the proceeds pursuant to § 70-29-101, MCA; or (2) distribute the property in kind pursuant to § 72-3-902, MCA. She correctly points out that the court has the "flexibility" to partition the property without requiring her first to quitclaim her property interest back to the Estate. Section 70-29-101, MCA, authorizes an action for partition when property is under the ownership of "several cotenants . . . as joint tenants or tenants in common . . . ." She also argues that a distribution in kind would not require her to deed any interest in her property back to the Estate in light of the fact that she will receive an interest in the Flathead County property larger than or equal to her current interest.

¶41 Neil offers no argument regarding whether the court erred in compelling Lois to quitclaim her interest in the Flathead County property or what law should govern this issue. We also note that Lois is unlikely to receive less than one half of the Estate in light of our holding at ¶¶ 31-37, *supra*. The court's order appears, at best, to add an unnecessary step in the court's resolution of this Estate. *See DeVoe v. Department of Revenue*, 263 Mont. 100, 115, 866 P.2d 228, 238 (1993) (noting that neither law nor equity require useless acts). We cannot say under these circumstances that the court

14

correctly ordered Lois to quitclaim her interest in the Flathead County property. *In re Estate of Harms*, ¶ 12.

¶42    We reverse the District Court's September 22, 2004, order determining that the remaining estate property should be distributed according to its current market value. We also reverse the court's March 16, 2006, order compelling Lois to quitclaim her interest in the Flathead County property back to the Estate. We remand for further proceedings consistent with this Opinion.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE

Justice James C. Nelson dissents.

¶43    I dissent from the Court's decision.

¶44    I did not sit on *In re Estate of Snyder*, 2000 MT 113, 299 Mont. 421, 2 P.3d 238 (*Snyder I*). Respectfully, I cannot agree with the Court's decision in that case. I believe that the District Court Judge was correct and I would have affirmed. In my view, the Court simply re-wrote Lucile's will and frustrated her testamentary intent and estate plan. Now, Lois is, unfortunately, the victim of her own success in *Snyder I*. That, however, is water over the dam. *Snyder I* is the law of this case and must be followed.

15

¶45     I would dismiss the instant appeal without prejudice as being interlocutory.  While under other circumstances I would agree with the Court's analysis of M. R. App. P. 1(b)(2) and (3), I believe that we have already dealt with the appealability issue and have, in so doing, created a law of the case that must be followed.

¶46     Under the law of the case doctrine, a prior decision of this Court resolving an issue between the same parties is binding and may not be relitigated.  *Muri v. Frank*, 2003 MT 316, ¶ 11, 318 Mont. 269, ¶ 11, 80 P.3d 77, ¶ 11.  This doctrine "expresses the practice of courts generally to refuse to reopen what has been decided."  *Scott v. Scott*, 283 Mont. 169, 175, 939 P.2d 998, 1001 (1997) (quoting *Fiscus v. Beartooth Elec. Cooperative, Inc.*, 180 Mont. 434, 436, 591 P.2d 196, 197 (1979); s*ee also State v. Van Dyken*, 242 Mont. 415, 791 P.2d 1350 (1990), *cert. denied*, 498 U.S. 920, 111 S. Ct. 297 (1990) (this Court's earlier decision rendered in response to defendant's application for writ of supervisory control addressing the issue of failure to poll the jury before declaring a mistrial, remained binding and could not be relitigated under the law of the case doctrine)).

¶47     In this Court's November 22, 2005 Order dismissing Lois's appeal, we not only made the statement referred to in ¶ 15 of the Opinion, but we also stated:  "For example, an order directing the distribution or partition of an estate is appealable; *here, however, the Estate has yet to be distributed.  This will not occur until after the court receives the proposed valuations from the parties and holds a hearing on valuations*."  On that basis, we determined that Lois's appeal was not final under M. R. App. P. 1.  (November 22, 2005 Order dismissing the appeal in this Court's Cause No. 04-727 (emphasis added)).

16

¶48    Clearly, we dismissed Lois's prior appeal because the property had yet to be valued or distributed.  That was the situation when Lois filed her instant appeal—and still is.  Neither of the orders appealed from valued or distributed the property; both were simply interlocutory orders entered in preparation for valuing and distributing the property; neither were certified as final for purposes of appeal under M. R. Civ. P. 54(b).  Accordingly, and regardless of whether the orders might otherwise be appealable under the Montana Rules of Appellate Procedure, they are not appealable under the law of this case pursuant to our November 22, 2005 Order.

¶49    Unfortunately, in not allowing the trial court to value and finally distribute Lucile's estate, we will, no doubt, subject the District Court, the parties, and this Court to an endless round of piece-meal appeals as this case moves forward.

¶50    I would dismiss this appeal without prejudice; I would allow the District Court to complete its valuation and distribution of the Estate; and I respectfully dissent from our decision to the contrary.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins in the Dissent of Justice James C. Nelson.

/S/ PATRICIA COTTER

17