No. DA 06-0631

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 155

_____

IN THE MATTER OF THE ESTATE OF

KATHLEEN LYNCH AYERS,

     Deceased.

_____

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and for the County of Stillwater, Cause No. DP 99-33,
The Honorable Blair Jones, Presiding Judge.

COUNSEL OF RECORD:

    For Appellant:

        David A. Veeder and Jolane D. Veeder, Veeder Law Firm, Billings,
        Montana

    For Respondent:

        Vicki L. McDonald, McDonald Law Firm, Billings, Montana

_____

Submitted on Briefs:  May 31, 2007

Decided:  June 26, 2007

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Donielle Ayers Slanina (Donielle) appeals from two orders of the Twenty-Second Judicial District Court, Stillwater County, resolving a dispute between her and her sister, Lorielle Ayers Waisanen (Lorielle), over their respective rights to the estate of their mother, Kathleen Lynch Ayers (the Estate).

¶2      We review the following issues on appeal:

¶3      Did the District Court correctly determine that the Fishtail property should pass to Donielle and Lorielle pursuant to the intestate succession statutes, §§ 72-2-101-124, MCA?

¶4      Did the District Court abuse its discretion when it ordered the Fishtail property to be distributed?

## FACTUAL AND PROCEDURAL HISTORY

¶5      Kathleen died on September 5, 1999, leaving an estate valued at approximately $100,000.  The Estate consists, in large part, of a residence located on five acres of land in Stillwater County (the Fishtail property).  Her daughters, Donielle and Lorielle, have been litigating for almost eight years over their respective rights to the Fishtail property.  Their disagreement focuses on the following provision in Kathleen's will (the Fishtail provision):

> Fishtail Property Acreage and Buildings—in dual name of Kathleen Lynch Ayers and Donielle Ayers Slanina, at this time, shall remain in her name. She has promised to share title and all duties with Lorielle Ayers Waisanen.

¶6      Kathleen and Donielle each owned a 50% undivided interest in the Fishtail property, as tenants in common, at the time of Kathleen's death.  Donielle contends that

2

the first sentence in the Fishtail provision indicates Kathleen's intent to devise her 50% share of the property to Donielle.

¶7    Donielle, acting as the Estate's personal representative, requested that the court construe the Fishtail provision. The District Court determined on March 20, 2003, that the will made no valid devise of the Fishtail property. The court ruled instead that the property should pass according to the laws of intestate succession as specified in § 72-2-111, MCA. The court ordered, pursuant to § 72-2-111, MCA, that Donielle and Lorielle each would receive half of the Estate's 50% interest in the Fishtail Property. Accordingly, Donielle would end up with a total of 75% interest in the property and Lorielle would end up with a total of 25% interest in the property.

¶8    Donielle filed a "Final Report and Account; and Petition for Order of Complete Settlement of Estate" (Final Report) with the court on June 23, 2004. The Final Report suggested, contrary to the court's interpretation of the will, that the court should distribute the Estate's entire 50% interest in the Fishtail property to Donielle. The Final Report stipulated that the Estate would pay Lorielle "any difference that may result from the distribution to Donielle of the Fishtail Residence property that exceeds Donielle's equal share of the residue."

¶9    Donielle notified Lorielle that the court would hold a hearing on August 26, 2004, regarding Donielle's Final Report. Lorielle objected to the notice of hearing in light of the fact that she had not received sufficient discovery to draft her objections to the Final Report. Lorielle pointed out that the court had ordered Donielle to comply with Lorielle's outstanding discovery requests within five days of June 30, 2004. The parties

3

thereafter litigated for another two years over the discovery motion, discovery sanctions, various pieces of personal property in the Estate, and four "addendums" to Donielle's Final Report.

¶10    Lorielle moved the court on May 24, 2006, to distribute the Fishtail property according to the court's March 20, 2003, order.  The court held a hearing on August 3, 2006, to consider Lorielle's motion.  Donielle filed a "memorandum" that same day indicating that the proposed distribution of the Fishtail property would leave the Estate $4,506 in debt to Donielle.  Donielle contended at the hearing that she would breach her fiduciary duty to the Estate if she were to distribute the property under these circumstances.

¶11    The court questioned how its distribution order could cause Donielle to violate her fiduciary duties.  The court pointed out that Donielle had included approximately $28,000 in attorney fees in her deficit calculation.  The court stated that "frankly [those fees represent] a large . . .  fee for an estate that is valued at a little over $100,000."  The court also expressed its desire to resolve this probate before the Estate is "all paid out in attorney fees and other costs."  The court noted that "whether we're $4,500 short or not is certainly subject to conjecture at this point.  But what is not subject to conjecture is that we're making no progress."  The court granted Lorielle's motion for a deed of distribution, leaving Donielle with a 75% undivided interest in the property and Lorielle with a 25% undivided interest in the property.  Donielle appeals.

## STANDARD OF REVIEW

¶12 The judicial interpretation and construction of a will presents a question of law. *In re Estate of Snyder,* 2000 MT 113, ¶ 8, 299 Mont. 421, ¶ 8, 2 P.3d 238, ¶ 8. We review a district court's conclusions of law to determine whether those conclusions are correct. *In re Estate of Harms*, 2006 MT 320, ¶ 12, 335 Mont. 66, ¶ 12, 149 P.3d 557, ¶ 12. We review a district court's order regarding the partial distribution of estate assets for clear error or abuse of discretion. *Estate of Barber*, 216 Mont. 26, 27-28, 699 P.2d 90, 91 (1985).

## DISCUSSION

¶13 *Did the District Court correctly determine that the Fishtail property should pass to Donielle and Lorielle pursuant to the intestate succession statutes, §§ 72-2-101-124, MCA?*

¶14 Donielle challenges the District Court's determination that Kathleen's will failed to devise the Fishtail property. We look to the testator's intent when construing a will. *Snyder*, ¶ 10. We interpret the words used in a will pursuant to their ordinary and grammatical sense unless a clear intention to use them in another sense can be ascertained. *Snyder*, ¶ 10 (quoting *Matter of Estate of Bollinger*, 284 Mont. 114, 121, 943 P.2d 981, 985 (1997)). Where the language is unclear, we ascertain the testator's intent from a consideration of the will as a whole, and a comparison of its various parts in the light of the circumstances surrounding the drafting of the will. *Snyder*, ¶ 10.

¶15 Donielle contends that the following phrase in the Fishtail provision represents Kathleen's intent to devise her 50% interest in the property to Donielle: "Fishtail

5

Property Acreage and Buildings—in dual name of Kathleen Lynch Ayers and Donielle Ayers Slanina, at this time, shall remain in her name." The will's plain language indicates, however, that Kathleen misunderstood the nature of Donielle's interest in the Fishtail property. *Snyder*, ¶ 10. The will states that the Fishtail property, "in dual name of Kathleen . . . and Donielle . . . , at this time, shall remain in her name." Kathleen and Donielle each owned a 50% interest in the Fishtail property as tenants in common. Tenants in common own several and distinct titles to their property. *Matter of Estate of Garland*, 279 Mont. 269, 276, 928 P.2d 928, 932 (1996); 20 Am. Jur. 2d Cotenancy and Joint Ownership § 35 (Joseph J. Bassano et. al. eds., Thompson/West 2005). Donielle would have retained at least a 50% interest in the property regardless of Kathleen's wishes. Thus, the will indicates that Kathleen mistakenly assumed that she had authority over Donielle's ownership interest in the property.

¶16 The will's language also indicates that Kathleen mistakenly assumed that if she made no change to the Fishtail property's title, then 100% of the interest in the Fishtail property would revert to Donielle when Kathleen died. Kathleen appears to assume that she and Donielle were joint tenants with rights of survivorship. Joint tenants with rights of survivorship automatically gain their co-tenant's interest in the estate upon the co-tenant's death. *Garland*, 279 Mont. at 272, 928 P.2d at 930; 20 Am. Jur. 2d Cotenancy and Joint Ownership § 4 (Joseph J. Bassano et. al. eds., Thompson/West 2005). Kathleen reminds Donielle that "[s]he has promised to share title and all duties with Lorielle Ayers Waisanen." Kathleen's reminder to Donielle would be superfluous unless she assumed that Donielle held the sole right to survivorship in the Fishtail property.

6

¶17 We previously have stated the general rule that "a recital in a will of a conveyance of land which was not in fact made, or which proved to be ineffectual, will not operate as a devise . . . ." *In re Watts' Estate*, 117 Mont. 505, 519, 160 P.2d 492, 499 (1945). One treatise explains that "[w]here the testator in his will recites erroneously that he has conveyed certain of his real estate by deed to a certain named person, it does not show an intention to dispose of the property by will, but merely the testator's opinion as to the legal effect of some pre-existing instrument." William J. Bowe & Douglas H. Parker, *Page on the Law of Wills*, vol. 4, § 30.18, 156 (3d ed., Matthew Bender & Co., Inc., 2004); 96 Corpus Juris Secundum, Wills § 839 (Kevin J. Schroder ed., West Group 2001).

¶18 The Fishtail provision represents Kathleen's false assumption as to the legal status of the Fishtail property's title. Kathleen mistakenly assumed that Donielle would take sole ownership to the Fishtail property by operation of law as the surviving joint tenant. In fact, Kathleen and Donielle held title as tenants in common, without any right of survivorship. *See Garland*, 279 Mont. at 276, 928 P.2d at 932; 20 Am. Jur. 2d Cotenancy and Joint Ownership § 35 (Joseph J. Bassano et. al. eds., Thompson/West 2005). Kathleen's misstatement of Donielle's ownership interest in the Fishtail property cannot act as evidence of her intent to devise that property. *In re Watts' Estate*, 117 Mont. at 519, 160 P.2d at 499.

¶19 Donielle argues that the phrase "shall remain in her name" represents Kathleen's intent that the "Fishtail property was to remain solely in [Donielle's] name after the death of [Kathleen]." She contends that we should construe this provision as devising

7

Kathleen's 50% interest in the property to Donielle, leaving Donielle with sole title to the property. Donielle contends that her construction would explain why Kathleen reminded Donielle of her promise to share her title and duties with Lorielle.

¶20 Donielle's interpretation of the Fishtail provision, however, would create an awkward and ambiguous bequest, uncharacteristic of other provisions in the will. *See Snyder*, ¶ 10. The will repeatedly displays Kathleen's ability to devise property with clear language. The will provides, for example, that the "Laurel Property and Buildings—shall be transferred to Donielle . . . and Lorielle . . . for dual ownership . . . ;" "Horse Trailer to Donielle . . . ;" and "[a]ll rifles, Shotguns, Handguns to go to John . . . ." The will indicates that Kathleen was capable of devising her Fishtail property interest in clear and simple terms had she intended to do so.

¶21 The District Court correctly determined that the will "makes no valid devise" of the Estate's 50% interest in the Fishtail property. *Estate of Harms*, ¶ 12. The court correctly concluded that the Estate's share of the Fishtail property should pass subject to the laws of intestate succession as specified in § 72-2-111, MCA.

¶22 *Did the District Court abuse its discretion when it ordered the Fishtail property to be distributed?*

¶23 Donielle also challenges the District Court's order to distribute the Fishtail property on the basis that it places the Estate in a "deficit cash situation," and thereby causes Donielle to breach her fiduciary duty to preserve the Estate's assets. She bases her prediction that the court's order will bankrupt the Estate on calculations, however, that the court found speculative. She also fails to cite any authority for her novel

8

proposition that the court's distribution order somehow could cause her to breach her fiduciary duties to the Estate.

¶24   The court had reason to believe at the August 3, 2006, hearing that the parties would be unable to conclude their dispute over the Fishtail property absent its order to distribute the property. The court had determined over three years earlier that Donielle and Lorielle should receive 75% and 25% of the Fishtail property respectively. Donielle and Lorielle nevertheless continued to fight over the property, including filing a pending motion for discovery sanctions and four addendums to the Estate's Final Account. The court noted that Donielle and Lorielle had made no progress in over seven years of probate and already had dissipated at least one-third of the Estate's value in attorney fees and expenses. We cannot say under these circumstances that the court abused its discretion or committed clear error when it determined that this probate "needs to come to a halt" and that distributing the Fishtail property will "be helpful in moving [the probate] along." *Estate of Barber*, 216 Mont. at 27-28, 699 P.2d at 91.

¶25   Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

9