

DA 12-0512

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 114

DOUGLAS P. ECTON, Personal Representative
of the Estate of Zales N. Ecton, Jr.,

      Applicant and Appellant,

  v.

ZALES N. ECTON, III,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DP-06-132A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Lynda S. White, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

          William E. McCarthy, Reid J. Perkins, Worden Thane, P.C.,
Missoula, Montana

      For Appellee:

          Cindy E. Younkin, Younkin Law, PLLC, Bozeman, Montana

          Cory J. Swanson, Attorney at Law, Helena, Montana

Submitted on Briefs:  March 6, 2013

Decided:  April 30, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Douglas P. Ecton (Doug), the personal representative of the estate of Zales N. Ecton, Jr. (Decedent), appeals from a final distribution order of the Eighteenth Judicial District Court, Gallatin County, which interpreted Decedent's last will and testament to devise the entirety of Decedent's real property known as the "Home Ranch" to Zales N. Ecton, III (Zales). We affirm.

## ISSUES

¶2 Doug raises the following two issues on appeal:

¶3 1. Did the District Court err in interpreting the requirement in the Decedent's last will and testament that I.R.C. § 2032A property be distributed as part of the residuary estate, as requiring a specific devise of the I.R.C. § 2032A property to Zales rather than a devise to the residuary beneficiaries?

¶4 2. Did the District Court err in allowing Zales to raise an objection to the personal representative's decision to award the income from the I.R.C. § 2032A property to the residuary beneficiaries more than thirty days after the proposed distribution was submitted for approval?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 This case involves a dispute between siblings over who was entitled to receive farm and ranch land owned by their parents. The real property at issue, the Home Ranch, consisted of over 1900 acres located near Amsterdam, Montana.

¶6 On October 26, 1990, Decedent executed his last will and testament. Decedent's last will and testament was a reciprocal will with his wife, Patricia Ecton (Patricia).

Decedent and Patricia had three children: Zales, of Amsterdam, Montana; Doug, of Spokane, Washington; and Elaine E. Fulton (Elaine), of Spokane, Washington. Zales operated the farm and ranch business on the Home Ranch for nearly forty years.

¶7 Decedent's last will and testament contained the following pertinent provisions:

FIVE: (C)(1) Upon the death of my wife, the trust shall terminate. If the "Home Ranch" described in subparagraph (C)(3) or any portion of that ranch is then an asset of the trust estate, the trustee shall distribute the "Home Ranch" or so much of it as is part of the trust estate to my son ZALES N. ECTON III if (i) he is then living and (ii) if he pays Twenty-five Thousand Dollars ($25,000) each to my son DOUGLAS B. ECTON and my daughter ELAINE E. FULTON. Such may be paid on a deferred basis in annual installments for a period not to exceed ten (10) years with interest at the lowest I.R.S. permissible interest rate. If DOUGLAS is not then living, ZALES may receive the trust's interest in the "Home Ranch" without any payment to DOUGLAS' estate or distributees. If ELAINE is not then living, ZALES may receive the trust's interest in the "Home Ranch" without any payment to ELAINE's estate or distributees. If ZALES is not then living, the provisions of this paragraph concerning the distribution of the "Home Ranch" will not apply.

(2) All of the then-remaining assets then contained in the trust shall be divided into equal separate shares, so as to provide one share for each child of mine, then living, and one share for the then-living descendants, collectively, of each then deceased child of mine. The trustee shall distribute each share set aside for a living child of mine to each such child. Additionally, the trustee shall distribute the share for the then-living descendents of any deceased child of mine to those descendants by right of representation.

(3) The term "Home Ranch" refers to that land (and improvements thereon) that I have used for farming purposes located near Amsterdam in Gallatin County, Montana, and which consists of approximately 1,902 deeded acres of land and 480 acres of state leases.

SIX: If my wife fails to survive me, my personal representative shall dispose of my residuary estate in the same fashion as provided for in Article FIVE (C).

SEVEN: Notwithstanding the foregoing, if my personal representative concludes in good faith to elect special use valuation provided for in I.R.C. § 2032A, all devises of farm property to any child and to any descendent of

3

any deceased child are contingent upon said beneficiaries [sic] execution of the agreement required by I.R.C. § 2032A(d)(2). The failure of any beneficiary who has an interest in such farm property to timely execute such an agreement shall cause the devise to such beneficiary to lapse. Further, those who would otherwise take such a lapsed share, shall also be subject to the requirements of this Article.

EIGHT: I recognize that my personal representative may elect special use valuation provided for in I.R.C. § 2032A. My personal representative shall confine such election to such tracts or fractional interests in real estate as shall be the minimum of the same necessary to produce the maximum reduction from fair market value allowable under § 2032A. I direct that my personal representative distribute such property as part of my residuary estate (Articles FIVE or SIX) and not as part of the marital deduction pecuniary devise (Article FOUR).

¶8 Decedent executed three codicils to his last will and testament: the first on December 20, 1990; the second on October 13, 1994; and the third on January 27, 2004. The first codicil added a provision that excluded adopted children from the definition of "descendants." The second codicil changed the order of persons to be elected as trustee and personal representative of Decedent's trust and estate by moving Doug from third to second priority, swapping his position with Zales.

¶9 Patricia died on March 13, 1998. At the time of her death, Patricia owned an undivided one-half interest in the Home Ranch as a tenant in common with Decedent. Patricia's will created a trust and transferred her interest in the Home Ranch to the trust upon her death. Decedent was the sole income beneficiary of the trust. Patricia's will dictated that the trust was to terminate upon the death of Decedent. A reciprocal provision of Patricia's will provided that upon Decedent's death, any portion of the Home Ranch that was an asset of the trust estate was to be distributed to her son, Zales.

4

Decedent remarried in 2000, but did not add any specific provision to his will or subsequent codicils providing for his new wife.

¶10 Decedent executed his third codicil on January 27, 2004. The third codicil provided that Doug was to be appointed as the personal representative of Decedent's estate, with Elaine as next in line to fill the role of personal representative. The third codicil amended Article 5(C) of Decedent's will to include the following language:

> FIVE: (C)(1) Upon my death, the trust shall terminate. If the "Home Ranch" described in subparagraph (C)(3) or any portion of that Ranch is then an asset of the trust estate, the trustee shall distribute the "Home Ranch" or so much of it as is part of the trust estate to my son ZALES N. ECTON III if he is then living.
>     (2) All of the then-remaining assets then contained in the Trust shall be divided equally between my son, DOUGLAS B. ECTON and my daughter, ELAINE E. FULLTON [sic]. It is my intent that my son ZALES N. ECTON, III receive the "Home Ranch" and that my other son, DOUGLAS B. ECTON and my daughter ELAINE E. FULLTON [sic] receive the remaining residuary assets of my estate. If either DOUGLAS B. ECTON or ELAINE E. FULLTON [sic] pre-decease me there [sic] share shall be distributed to any of their respective decedents [sic] by right of representation.
>     (3) The term "Home Ranch" consists of approximately 1,920 deeded acres of land.

¶11 Decedent died on November 3, 2006. Doug was appointed to serve as the personal representative of Decedent's estate and successor trustee to Patricia's trust. Doug surveyed and partitioned the Home Ranch so that one half of the real estate could be separately deeded to the trust beneficiary, Zales. The remaining acreage of the Home Ranch was subject to probate. Because the date of death valuations for all of Decedent's assets exceeded the $2,000,000 exemption for federal estate tax purposes, Doug utilized a special valuation statute for farm property, I.R.C. § 2032A, to reduce the estate's value

5

by classifying 528 acres of the Home Ranch as farm property. This alternative land valuation method allowed the 528 acres to be valued at its productive value instead of its fair market value.

¶12 On July 7, 2009, Doug filed a final accounting with the District Court. Relying on Article EIGHT of Decedent's will, which states that "I direct that my personal representative distribute such property [property valued pursuant to I.R.C. § 2032A] as part of my residuary estate," the final accounting proposed to distribute equally between Doug and Elaine the 528 acres of the Home Ranch that was subject to the I.R.C. § 2032A special use valuation. On July 31, 2009, Zales filed an objection to the final accounting. Zales argued that devising any portion of the Home Ranch to Doug and Elaine was contrary to Decedent's testamentary intent as demonstrated by the express language of Decedent's will. Doug and Zales briefed their respective positions before the District Court and each filed proposed distribution orders.

¶13 On March 29, 2011, the District Court issued its order of final distribution. The District Court determined that Article EIGHT of Decedent's will did not require the land subject to the I.R.C. § 2032A election to be distributed as part of the residuary estate to Doug and Elaine in light of the mandates of Article FIVE as revised by the third codicil. The District Court determined that Decedent clearly intended to devise the entire Home Ranch to Zales.

¶14 Following the District Court's entry of its order of final distribution, Doug submitted an amended final accounting. The amended final accounting distributed the 2009, 2010, and 2011 income from the I.R.C. § 2032A property to Doug and Elaine.

Zales filed an objection to the amended final accounting on December 16, 2011, arguing that he was entitled to the income associated with the I.R.C. § 2032A portion of the Home Ranch. On May 11, 2012, the District Court issued its order on Zales' objection to the amended final accounting. The District Court determined that its order of final distribution, which directed distribution of "all the property known as the 'Home Ranch,' in its entirety" to Zales, would necessarily include any associated income and proceeds from the property. Therefore, the District Court granted Zales' objection to the amended final accounting and awarded the 2009, 2010, and 2011 income from the I.R.C. § 2032A property to Zales. Doug appeals.

## STANDARDS OF REVIEW

¶15 "The judicial interpretation and construction of a will presents a question of law." *In re Estate of Ayers*, 2007 MT 155, ¶ 12, 338 Mont. 12, 161 P.3d 833; *In re Estate of Snyder*, 2007 MT 146, ¶ 18, 337 Mont. 449, 162 P.3d 87 (*Snyder II*). We review a district court's conclusions of law for correctness. *Ayers*, ¶ 12; *Snyder II*, ¶ 18.

## DISCUSSION

¶16 *Did the District Court err in interpreting the requirement in the Decedent's last will and testament that I.R.C. § 2032A property be distributed as part of the residuary estate, as requiring a specific devise of the I.R.C. § 2032A property to Zales rather than a devise to the residuary beneficiaries?*

¶17 The object of a judicial interpretation of a will is to ascertain the intention of the testator. *In re Estate of Bolinger*, 284 Mont. 114, 121, 943 P.2d 981, 985 (1997) (citations omitted). The testator's intent controls the distribution of assets pursuant to a will. *Snyder v. Snyder*, 2000 MT 113, ¶ 10, 299 Mont. 421, 2 P.3d 238 (*Snyder I*); *In re*

7

*Estate of Evans*, 217 Mont. 89, 94, 704 P.2d 35, 38 (1985). When construing a will, we interpret the words used in the will according to their ordinary and grammatical sense, unless a clear intention to use them in another sense can be ascertained. *Ayers*, ¶ 14; *Snyder I*, ¶ 10. Where the language of the will is unclear, the testator's intent must be ascertained from a consideration of the instrument as a whole, and a comparison of its various parts in light of the circumstances surrounding the drafting of the will. *Ayers*, ¶ 14; *Snyder I*, ¶ 10.

¶18 The District Court determined that Decedent's intent, as demonstrated by the language of his will, was to devise the entire Home Ranch to Zales. Doug argues that the District Court erred in interpreting Decedent's will because the Decedent did not intend to devise the 528 acres of the Home Ranch subject to special value under I.R.C. § 2032A to Zales. Instead, Doug maintains that he and Elaine were entitled to receive this portion of the Home Ranch as part of the residuary estate.

¶19 Since Doug, as personal representative of Decedent's estate, elected to pursue estate valuation pursuant to I.R.C. § 2032A, Article EIGHT of Decedent's will took effect. Article EIGHT of Decedent's will provides as follows:

> I recognize that my personal representative may elect special use valuation provided for in I.R.C. § 2032A. My personal representative shall confine such election to such tracts or fractional interests in real estate as shall be the minimum of the same necessary to produce the maximum reduction from fair market value allowable under § 2032A. I direct that my personal representative distribute such property as part of my residuary estate (Articles FIVE or SIX) and not as part of the marital deduction pecuniary devise (Article FOUR).

8

Article FIVE (C)(2), as amended by Decedent's third codicil, controls the distribution of Decedent's property and reads as follows:

> It is my intent that my son ZALES N. ECTON, III receive the "Home Ranch" and that my other son, DOUGLAS B. ECTON and my daughter ELAINE E. FULLTON [sic] receive the remaining residuary assets of my estate.

Though we recognize that Article EIGHT does in fact state that the property subject to special valuation shall be distributed as part of Decedent's residuary estate, when read together with Article FIVE, it is clear that Decedent did not intend to divide that portion of the Home Ranch between Doug and Elaine.

¶20    The Decedent's testamentary intent is clearly ascertainable from the express language of Article FIVE (C)(2). In Article FIVE (C)(2), Decedent stated that: "It is my intent that my son ZALES N. ECTON receive the 'Home Ranch.'" This Article goes on to state that Doug and Elaine are to receive the "remaining residuary assets" of Decedent's estate. By including the word "remaining" in a description of the residuary assets directly following the Decedent's stated intent to devise the Home Ranch to Zales, it is clear that the residuary estate divided between Doug and Elaine does not include any portion of the Home Ranch. Any contrary interpretation would ignore the clear, unambiguous, express intent of the Decedent to devise the Home Ranch to Zales.

¶21    Accordingly, we conclude that the District Court did not err in interpreting Decedent's will to determine that Decedent intended to devise to Zales the 528 acres subject to special farm property valuation.

9

¶22 *Did the District Court err in allowing Zales to raise an objection to the personal representative's decision to award the income from the I.R.C. § 2032A property to the residuary beneficiaries more than thirty days after the proposed distribution was submitted for approval?*

¶23 It is undisputed that Zales filed a timely objection to the July 7, 2009 final accounting. However, Doug argues that Zales only objected to the proposed distribution of the real property subject to the I.R.C. § 2032A election, and therefore failed to timely object to the distribution of income from that property to Doug and Elaine. Doug contends that any objection to the final accounting must have been made within 30 days of the July 7, 2009 final accounting pursuant to § 72-3-903, MCA. Section 72-3-903(2), MCA, provides as follows:

> The right of any distributee to object to the proposed distribution on the basis of the kind or value of asset the distributee is to receive, if not waived earlier in writing, terminates if the distributee fails to object in writing received by the personal representative within 30 days after mailing or delivery of the proposal.

Doug maintains that Zales waived his right to object to the distribution of income from the I.R.C. § 2032A property because he did not object on that basis until after the amended final accounting was drafted.

¶24 The District Court's March 29, 2011 order of final distribution did not specifically address the distribution of income from the I.R.C. § 2032A property, although it directed that Zales was entitled to receive the entirety of the I.R.C. § 2032A property. Doug subsequently drafted an amended final accounting to reflect that the entire Home Ranch must be distributed to Zales. Upon receiving the amended final accounting, Zales filed an objection to the distribution of income from the I.R.C. § 2032A property to Doug and

10

Elaine. The District Court determined that its order of final distribution, which directed distribution of "all the property known as the 'Home Ranch,' in its entirety" to Zales, would necessarily include any associated income and proceeds from the I.R.C. § 2032A property. Accordingly, the District Court granted Zales' objection to the amended final accounting and awarded the 2009, 2010, and 2011 income from the I.R.C. § 2032A property to Zales. We agree with the District Court's decision.

¶25 Section 72-34-428(1), MCA, provides that "If property is specifically given to a beneficiary, by will or trust, the fiduciary of the estate or of the terminating income interest shall distribute the net income and principal receipts to the beneficiary who is to receive the property. . . ." "A specific devise differs from a general devise in that it is not intended by the testator to be paid out of the estate generally, but is to be paid solely by delivering to the devisee that specific article given by the will." *Holtz v. Deisz*, 2003 MT 132, ¶ 25, 316 Mont. 77, 68 P.3d 828. Since the Home Ranch is a specific piece of property defined in Decedent's will, Decedent's language in his will stating that "It is my intent that my son ZALES N. ECTON, III receive the 'Home Ranch' " plainly constitutes a specific devise. As such, § 72-34-428(1), MCA, controls the distribution of income from the Home Ranch and mandates that such income must be distributed to Zales. Zales timely objected to the final accounting that proposed to distribute the I.R.C. § 2032A property to Doug and Elaine. Once the District Court concluded that Zales was entitled to receive the I.R.C. § 2032A property, it follows that Zales was entitled to receive the income from such property.

11

¶26 We hold that the District Court did not err in allowing Zales to object to the personal representative's proposed distribution of income from the I.R.C. § 2032A property.

## CONCLUSION

¶27 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE