FILED

08/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0114

DA 23-0114

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 194N

IN RE THE MATTER OF THE ESTATE OF:

C. PATRICIA FIELD,

    Deceased.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Broadwater, Cause No. DDP-2020-04
Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

    For Appellant Scott Field:

    Michael L. Rausch, Brian P. Thompson, Browning, Kaleczyc, Berry
    & Hoven, P. C., Great Falls, Montana

    For Cross-Appellant Patricia F. Grosfield:

    Norman H. Grosfield, Grosfield Law Firm, Helena, Montana

    For Appellee Chris Field:

    Amos Rogers Little, III, Attorney at Law, Helena, Montana

    For Appellee: Greg Field:

    Kelby R. Fischer, Attorney at Law, Helena, Montana

Submitted on Briefs:  September 20, 2023

Decided:  August 27, 2024

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Scott Field (Scott) and Patricia F. Grosfield (Patti) appeal the December 2022 judgment of the Montana First Judicial District Court, Broadwater County, granting the Estate partial summary judgment, authorizing the Estate to distribute personal property, and denying all other pending motions before the court. We affirm.

¶3    This case arises from several ongoing disputes among estate heirs regarding the administration of the will of C. Patricia Field (Pat), and the related valuation and distribution of a tract of land upon which a homestead structure is located. Decedent Pat Field and her husband Lester Field (Buzz) purchased and owned a large ranch in 1971 as tenants in common. Located on an approximate 2 acre tract of the ranch land is a fifty-year-old manufactured home which the parties refer to as the Homestead Property.

¶4    In 1991, Pat and Buzz entered into a contract for deed with their son Greg for the purchase and sale of the ranch property. Expressly excepted from the agreed sale was the Homestead Property in and upon which Pat and Buzz resided and a referenced roadway easement benefitting the Homestead Property across the ranch land to be conveyed to Greg under the contract for deed. The contract nonetheless further provided that the "excepted" Homestead Property would eventually:

be conveyed [to Buyer (Greg)] at a later date, after survey, at which time the appropriate deeds will be substituted for those held in escrow, and [at which time] Buyer will execute a Quit Claim Deed to said two acres to reflect the change made to the Notice of Purchaser's Interest. Buyer agrees to pay for the survey.

It is undisputed, however, that Greg neither surveyed the property, nor executed a corresponding quit claim deed for substitution into the escrow, and that Pat and Buzz thus did not convey the property to him while they were both still alive as contemplated in that provision.

¶5     In contemplation of such occurrence (i.e., the death of one or both of the Sellers before occurrence), the contract alternatively granted Greg the right to buy the Homestead Property upon survey and at fair market value as mutually agreed or determined by third-party appraisal. If the parties could not agree on a fair market value, the contract specified the following appraisal procedure:

> The appraisal shall be made by three disinterested persons. One of the appraisers shall be chosen by each party or representative, and the two appraisers so selected shall together select a third appraiser. A decision of the majority of the appraisers shall be binding and shall be considered as the decision of the three appraisers.

As another condition precedent to such sale, the contract required that Greg pay the appraised sales price in cash. The contract further alternatively granted Greg a right of first refusal in the event that a sale did not occur in accordance with those terms and conditions and in event of receipt by the surviving Seller or estate(s) of a bona fide third-party offer acceptable thereto.

3

¶6 Over fifteen years later, on September 20, 2005, Pat and Buzz executed mirroring wills. Buzz predeceased Pat on December 6, 2015. Pat updated her will in 2017, but with language that was, as pertinent here, substantially similar to the language in her 2005 will. Apart from a provision authorizing devise of specific items of tangible personal property by written list in accordance with § 72-2-533, MCA, Pat's will provided for devise of all other estate property, including the Homestead Property, via a residual clause, to wit in pertinent part:

> [U]nder the terms of the contract for deed dated September 17, 1991, we also excepted and reserved our residence and surrounding two acres located on the ranch property, and Greg obligated himself to survey two acres surrounding the house, along with a road easement to access the residence. *Whether that survey and related deed to convey that property to me is completed before I die*, the house and two acres shall be appraised in the manner provided in the contract for deed, and Greg's share shall be further reduced by the appraised amount, and he will have no further obligation to divide the house and two acres from the remainder of the ranch property. I intend these provisions to be contractual obligations that my other children may enforce after my death, and acceptance of the benefits given to all my children under this will shall be deemed sufficient consideration to support these contractual obligations.

(Emphasis added.)

¶7 Greg satisfied his payment obligations under the 1991 contract for deed on April 26, 2019, thus resulting in the subsequent release and recording of the escrowed 1991 warranty deed of the ranch property, except for the Homestead Property, to Greg. Pat later died on January 14, 2020, and her 2017 will was admitted to probate on February 3, 2020. Greg initially served as her personal representative, but stepped-down when disputes among

4

estate heirs ensued. Estate heir Chris Field then was appointed as the personal representative for Pat's estate on November 24, 2020.

¶8 During the pendency of the administration of will, the Homestead Property was independently appraised as specified in the 1991 contract for deed, resulting in an appraised value of $40,000 as of the time of Pat's death. Estate heir Scott Field responded with an offer to purchase the Homestead Property for $300,000. However, the Estate did not accept Scott's offer.

¶9 On March 17, 2022, the estate moved for summary judgment regarding various disputed issues regarding the valuation and distribution of the Homestead Property under Pat's will. Scott responded with a flurry of motions seeking, *inter alia*, removal of Chris as personal representative, an order compelling the Estate to accept his $300,000 offer to purchase the Homestead Property, and summary judgment compelling distribution of the Homestead Property accordingly. Estate heir Patti Field joined Scott's motion for summary judgment.

¶10 On December 2, 2022, the District Court issued a written order disposing of various outstanding matters including, *inter alia*, the matters now at issue on appeal. *Inter alia*, the Court ruled that: (1) genuine issues of material fact regarding the validity of a purported addendum to the 1991 contract for deed precluded summary judgment in favor of its purported beneficiary; (2) Greg was in any event entitled to distribution of the Homestead Property in accordance with the clear and unambiguous terms of Pat's will; (3) the Estate did not unlawfully reject Scott's $300,000 purchase offer in light of Greg's clear

5

entitlement to the Homestead Property under the terms of Pat's will; and (4) the Estate through the personal representative had, to the extent reasonably possible under the circumstances, complied with all pertinent legal obligations regarding its interim inventory, valuation, and proposed distribution of estate assets. Scott timely appeals.

¶11 *Inter alia*, Scott asserts that the District Court erroneously granted summary judgment regarding the distribution of the Homestead Property's value based on: (1) an erroneous interpretation of pertinent provisions of Pat's will including, *inter alia*, erroneous failure to construe the 2017 will in accordance with the pertinent terms of the 1991 contract for deed, thus resulting in the erroneous distribution of the Homestead Property to Greg; (2) erroneous valuation of the Homestead Property; (3) misapplication of applicable law; and (4) the resulting failure to equitably distribute the estate. He asserts that material aspects of the Court's rulings are based on erroneous or otherwise inadequate findings of fact and abuses of discretion. Estate heir Patti cross-appeals with emphasis on Scott's assertion that the District Court erroneously misinterpreted the will regarding the valuation of the Homestead Property.

¶12 The interpretation and construction of a disputed will provisions is a question of law. *Ecton v. Ecton*, 2013 MT 114, ¶ 15, 370 Mont. 52, 300 P.3d 706; *In re Estate of Ayers*, 2007 MT 155, ¶ 12, 338 Mont. 12, 161 P.3d 833; *In re Estate of Snyder*, 2007 MT 146, ¶ 18, 337 Mont. 449, 162 P.3d 87 (*Snyder II*). We review a district court's conclusions of law de novo for correctness. *Ecton,* ¶ 15; *Ayers*, ¶ 12; *Snyder* II, ¶ 18. We review district court findings of fact only for clear error, and discretionary estate administration matters

6

only for an abuse of discretion. *Ayers*, ¶ 12; *Barber*, 216 Mont. at 27-28, 699 P.2d at 91. An abuse of discretion occurs only if a court exercises granted discretion based on a clearly erroneous finding of material fact, an erroneous conclusion or application of law, or otherwise acts arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice. *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894; *Larson v. State*, 2019 MT 28, ¶ 16, 394 Mont. 167, 434 P.3d 241; *City of Missoula v. Mountain Water Co.*, 2018 MT 139, ¶ 9, 391 Mont. 422, 419 P.3d 685.

¶13 Courts must interpret and construe will provisions to effect the manifest intent of the testator to the extent possible. *See Ecton*, ¶ 17; *In re Estate of Bolinger*, 284 Mont. 114, 121, 943 P.2d 981, 985 (1997). The testator's intent controls the distribution of assets pursuant to a will. *Ecton*, ¶ 17; *Snyder v. Snyder*, 2000 MT 113, ¶ 10, 299 Mont. 421, 2 P.3d 238 (*Snyder I*); *In re Estate of Evans*, 217 Mont. 89, 94, 704 P.2d 35, 38 (1985). When construing a will, we interpret the words used in the will according to their ordinary and grammatical sense, unless a clear intention to use them in another sense can be ascertained. *Ecton*, ¶ 17; *Ayers*, ¶ 14; *Snyder I*, ¶ 10. If the language of a will is vague or ambiguous, the court must ascertain the intent of the testator based on consideration of the will, and any referenced extrinsic instruments, as a whole, and may consider the vague or ambiguous provision in light of the extrinsic circumstances surrounding the drafting of the will. *See Ecton*, ¶ 17; *Ayers*, ¶ 14; *Snyder I*, ¶ 10.

¶14 Here, the District Court correctly construed the pertinent language of Pat's 2017 will to manifest a clear and unambiguous intent to devise the Homestead Property to Greg regardless of whether the pertinent terms and conditions of the 1991 contract for deed remained unsatisfied at the time of her death. While surely not a concise specific devise to Greg, the residual clause of Pat's will nonetheless specified how the Homestead Property was to be treated in such event, i.e.: (1) independent appraisal in the manner specified in the contract for deed; (2) reduction of Greg's residual estate share by the so-appraised value of the Homestead Property; and (3) the proviso that Greg would then have no further obligation to divide the Homestead Property from the remainder of the ranch property to be distributed as a residuary estate asset if the terms and conditions of the contract for deed remained unsatisfied at the time of Pat's death. Moreover, neither Scott nor Patti have demonstrated that any material aspect of the District Court's judgment regarding the appraisal, valuation, or distribution of the Homestead Property was based on a clearly erroneous finding of material fact, erroneous conclusion or application of law, or arbitrary rationale, lacking in conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice.

¶15 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. For the foregoing reasons, the December 2022 judgment, including all constituent rulings at issue, is hereby Affirmed.

/S/ DIRK M. SANDEFUR

8

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE